# E. O. WINDERS v. ILLINOIS CENTRAL RAILROAD COMPANY.[1]

## No. 26,867.

### January 25, 1929.

[1]Reported in 223 N. W. 291, 226 N. W. 213.

*Helsell & Helsell, Catherwood, Hughes & Alderson, Edwin C. Brown* and *E. C. Craig,* for appellant.

*Tautges, Wilder & McDonald,* for respondent.

HOLT, J.

Defendant appeals from an order refusing to set aside the service of the summons and from an order denying its motion to dismiss the action.

Defendant is an Illinois corporation owning and operating lines of railroad extending into other states, including Kentucky and Minnesota, carrying interstate traffic. The summons was served by delivering a copy thereof to a ticket and freight agent of the defendant in charge of one of its railroad stations located in the county where the action was begun, as authorized by G. S. 1923 (2 Mason, 1927) § 9233. The action is to recover for personal injuries sustained by plaintiff in defendant's employ and while engaged in

moving a train carrying interstate commerce within the state of Kentucky. The claim is that defendant's negligence caused the injuries, and redress is invoked under the federal employers liability act. Plaintiff resided in Kentucky when injured but claims to have become a resident of this state before the action was begun.

The order refusing to set aside the service of the summons on the ground that the trial of the action in this state places an undue burden upon interstate commerce must be sustained on the authority of Erving v. C. & N. W. Ry. Co. 171 Minn. 87, 214 N. W. 12, followed in Kobbe v. C. & N. W. Ry. Co. 173 Minn. 79, 216 N. W. 543. See also State ex rel. Schendel v. District Court, 156 Minn. 380, 194 N. W. 780; Doll v. C. G. W. R. Co. 159 Minn. 323, 198 N. W. 1006. As we read Hoffman v. Missouri ex rel. Foraker, 274 U. S. 21, 47 S. Ct. 485, 71 L. ed. 905, the position taken by this court is sustained. In Schendel v. McGee (C. C. A.) 300 F. 273, 278, the court said:

"We assume Congress could provide that actions in the federal courts should be brought at places where the same would not constitute a burden on commerce, but Congress has not done so. It has given the right under the federal Employers' Liability Act, hereinbefore discussed, to an injured party, or in case of his death to the duly constituted representative, to maintain an action for damages in the courts of the district where the defendant is doing business at the time the suit is commenced. We are not concerned with the justice or the wisdom of such legislation. It being the law, it is a court's duty, where there is jurisdiction, to take and retain that jurisdiction and try the case."

The court in the same opinion pointed out the distinction between the statute authorizing service on a soliciting agent, involved in Davis v. Farmers Co-op. Equity Co. 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996, and service under G. S. 1923 (2 Mason, 1927) § 9233, upon a ticket and freight agent on a line of defendant's railroad operated in this state, in an action under the federal employers liability act. It may be conceded that this act, authorizing an action arising thereunder to be brought in the district "in which the defend-

4

ant shall be doing business at the time of commencing such action" [Comp. St. § 8662] is liable to place a heavy burden upon transcontinental railroads. If it does, the remedy is with congress, which no doubt can limit jurisdiction to the courts of the state or district where the injuries were inflicted. We however can see no ground for holding that part of the act above quoted unconstitutional. Furthermore, its constitutionality was challenged in State ex rel. Foraker v. Hoffman, 309 Mo. 625, 274 S. W. 362, on the same ground as now urged—that it placed undue burdens on interstate commerce. By affirming the decision of the supreme court of Missouri in that case, we think the Supreme Court of the United States has set at rest the question now attempted to be raised by appellant. Defendant was certainly doing business both as an interstate and intrastate carrier in this state when this action was commenced, and service was properly obtained.

The motion for a dismissal of the action, or declining to take jurisdiction, was based chiefly on the grounds that plaintiff's attorneys are engaged in the unethical practice of soliciting cases of this sort in other states and instituting actions thereon here, knowing that the railroads will rather submit to unjust exactions than incur the inconvenience and expense of a trial at a point hundreds or thousands of miles away from where the witnesses reside. It is also charged that plaintiff is a party or accomplice of the attorneys in the unlawful solicitation of like cases in behalf of the same attorneys.

Plaintiff was without funds and his attorneys loaned him $500. The trial court concluded it was a part of the working plan of the attorneys, in securing retainers, to finance injured railway employes. It also appears that the attorneys employ laymen to travel in the several states investigating cases in which the attorneys are interested, and we think the court was justified in concluding that these employes of the attorneys had procured the contract of retainer from plaintiff. Even assuming that this contract was champertous, it did not affect plaintiff's cause of action under our decisions. In Isherwood v. H. L. Jenkins Lbr. Co. 87 Minn. 388, 390, 92 N. W. 230, the court said:

"We are not disposed to minimize the evils of champertous agreements, and will refuse, on grounds of public policy, to enforce them. Huber v. Johnson, 68 Minn. 74, 70 N. W. 806 [64 A. S. R. 456]; Gammons v. Gulbranson, 78 Minn. 21, 80 N. W. 779. But upon principle and the decided weight of authority we hold that a defendant cannot avail himself of a champertous contract by the plaintiff, either as a defense, or by bringing it to the attention of the court and securing a dismissal of the action."

The only jurisdiction which seems to hold the contrary is Wisconsin. Emerson v. McDonnell, 129 Wis. 67, where prior decisions in that state are cited. In the annotation to Prosky v. Clark, 35 L.R.A.(N.S.) 512, a long list of cases from other jurisdictions is to be found, all in harmony with Isherwood v. H. L. Jenkins Lbr. Co. 87 Minn. 388, 92 N. W. 230. The trial court rightly refused to dismiss the action even though convinced that plaintiff had retained his attorneys under a champertous agreement, or that they are, by illegal methods, obtaining cases for prosecution in this state which in fairness ought to be tried elsewhere. Defendant claims that plaintiff assisted them in the unlawful solicitation of another case. The court did not so find, and we think the record would not sustain such a finding. That he visited a friend in the hospital who had received a serious injury and advised him to employ the same lawyers plaintiff had retained does not show an illegal act or motive. After this friend stated that he had concluded first to see whether he could effect settlement with the railway company without the aid of an attorney, there is no evidence that plaintiff again advised him to employ any counsel.

The orders are affirmed.

STONE, J. (concurring).

I agree that the courts of Minnesota cannot refuse to entertain this case for absence of jurisdiction and therefore that there should be no dismissal. But the case presents another problem, somewhat ignored by the opinion, in respect to which I cannot remain silent.

6

That the case was solicited and procured at Paducah, Kentucky, by a lay employe of plaintiff's attorneys regularly engaged for that purpose, is demonstrated if the record be read in the light of common knowledge. The courts of Minnesota are trying every year a mysteriously large number of foreign personal injury cases. The condition has been noted by the Supreme Court of the United States. See marginal note, Davis v. Farmers Co-op. Equity Co. 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996. When it is considered that the cost to the county of one such trial frequently amounts to several thousand dollars, it is easily appreciated that our taxpayers are annually paying an enormous bill properly chargeable to other states for the conduct of their litigation. Thus far, most of such cases have been against railways, but there has been some evidence of late that foreign automobile personal injury cases are beginning to come. It would be surprising if they did not under present conditions.

The cost to Minnesota taxpayers, while interesting and relevant, is not for present purposes the important thing. Entirely aside from that, imported cases present features which put them in a class by themselves. It costs money to get them. Competition is keen. The cost of procuring the business has been going up while the fees have remained stationary or, if anything, have gone down. It is a common practice for the attorneys procuring a case to finance their client to a greater or less degree pending the litigation. In this case the inference is quite clear that an initial advance of $500 to plaintiff by his attorneys had a very persuasive effect in procuring the contract with him. Such practices result in a very substantial cash investment in the case by the attorneys. That element, necessarily present, possibly explains why many of these imported cases are "made" by perjury. See for example Jackson v. C. G. W. R. Co. 165 Minn. 58, 205 N. W. 689. Some of them are meritorious. Neither the vice nor the virtue of them is a monopoly of either side. The point is that the expense of getting the case and holding it results in an unusual temptation to repair its weak points by spurious evidence.

Furthermore, that these cases, whatever their merits, evidence the existence of open and habitual champerty on a large scale is of course self-evident. The cases are brought here by unprofessional conduct and practices which are fast making the legal profession and the courts the subject of widespread criticism. To investigate and adopt any proper methods for the purpose of preventing such practices is within the jurisdiction of the district courts and of this court. They may and in my judgment should now take measures to prevent the further obstruction of Minnesota litigation and the administration of justice in this state through the clogging of our calendars with "champertous cases brought under contracts procured by 'ambulance chasers.'" State ex rel. Reynolds v. Circuit Court, 193 Wis. 132, 142, 214 N. W. 396. "Courts possess the inherent power to do whatever may be necessary to purge their calendars of champertous cases and to discipline members of their bars." Rubin v. State, 194 Wis. 207, 214, 216 N. W. 513.

In my opinion, slowly come to and reluctantly expressed (the delay in the decision of this case is chargeable solely to myself and my hesitancy in expressing the opinion which I now feel compelled to express) the courts of Minnesota should no longer delay in following the example set us by our brethren of Wisconsin and put on foot measures which will free our calendars of the intolerable burden of improperly imported litigation. Unless something is done to stop it, it is going to increase rather than decrease. One way of discouraging it would be for the judges before whom the cases are tried to feel freer to grant new trials as a matter of discretion wherever the verdict seems to them to follow testimony which is plainly false. Of course that rule, if applied, should work both ways, as much against as for the defense. It is the too frequent resort to perjury and the dulling effect upon moral sensibilities of familiarity with it which is more to be dreaded than anything else.

Nothing need be said to emphasize the vicious character and degrading tendency of the practice of organized and habitual solicitation of any kind of business by attorneys through paid employes.

It is especially dangerous to the profession when the potency of the solicitation is enhanced by the promise of whatever financial aid may be needed by the client pending the litigation. There is so much evidence of that sort of thing in this record that the trial judge was outspoken in emphatic denunciation. In his views I agree and I think the case should be referred to the board of law examiners for investigation and disciplinary action if the facts are found to warrant it.

Personally, I see so much evil already resulting from the highly organized and persistent solicitation by attorneys of personal injury business (and I am not now confining myself to that which is imported—a vast amount of local litigation is being solicited away from counsel to whom it rightly belongs) and so much more of discredit to bench and bar yet to come if the practice is not stopped, that I take this opportunity of absolving myself, so far as I may, from responsibility for the continued refusal of the courts of this state to take effective notice of the situation. If those who indulge in the practices now questioned consider them legitimate, they should welcome an investigation, for it would give them the opportunity of demonstrating the validity of their views.

ON APPLICATION FOR REARGUMENT.

On June 14, 1929, the following opinion was filed:

PER CURIAM.

The petition for reargument is denied.

Douglas v. N. Y. N. H. & H. R. Co. —— U. S. ——, 49 S. Ct. 355, 73 L. ed. 424, does not appear to us to suggest a departure from the practice heretofore pursued, in the absence of legislation, state or federal, otherwise directing. L. 1913, p. 100, c. 60, amending § 1780 of the Code of Civil Procedure of New York is:

"An action against a foreign corporation may be maintained by another foreign corporation, or by a non-resident, in one of the following cases only: * * * 4. Where a foreign corporation is doing business within this state."

In Gregonis v. Philadelphia & R. C. & I. Co. 235 N. Y. 152, 139 N. E. 223, it was held that its courts may not decline jurisdiction of a transitory action against a foreign corporation doing business in the state brought by a resident thereof. But in Murnan v. Wabash Ry. Co. 246 N. Y. 244, 158 N. E. 508, the above statute was construed as giving the court discretion to assume or decline jurisdiction when such an action was brought by a nonresident. Thus construed, a conflict with art. IV, § 2, of the constitution of the United States is avoided. The New York court decided the Douglas case upon the authority of the Murnan case.

We have no statute similar to that of New York, or one here applicable that may be construed with a like result. And even if we had, it could not overturn the order herein, for there is no finding that plaintiff was a nonresident when the suit was begun. Plaintiff's affidavit was that he established his residence in this state previous to suit, and the court in its memorandum attached to the order states that he claims to be a resident.

Petition denied.

WILSON, C. J. (concurring).

I concur in the result but not in the intimation that a different result might have been reached in the presence of a finding of nonresidence.

STONE, J. (concurring).

I concur in the result but not in the intimation that the courts of this state have no discretion to refuse to hear transitory actions between nonresidents based upon causes of action arising without this state. True, "we have no statute similar to that of New York," which is involved in the Gregonis, Murnan and Douglas cases and which is now construed to give New York courts the discretion in question. But we have no statute which precludes the exercise of such a discretion by our district courts. So the question seems to me an open one, not necessarily involved in the instant case.