# HELEN WITORT v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.[1]

October 4, 1929.

No. 26,992.

[1]Reported in 226 N. W. 934.

262

Richard L. Kennedy, William T. Faricy, P. J. McGough and Brown, Somsen & Sawyer, for appellant.
Robert J. McDonald, for respondent.

DIBELL, J.

Action to recover under the federal employers liability act, 45 USCA, §§ 51-59, for the death of plaintiff's intestate, Stephen Witort, alleged to have been caused by the negligence of the defendant while he was employed in interstate commerce.

The defendant is incorporated under the laws of Illinois, Michigan and Wisconsin. Witort was a resident of Illinois, working in the Proviso yards of the defendant at Chicago, and while working there was killed. The defendant moved to set aside the service of summons upon the ground that the prosecution of the action in Minnesota would constitute an interference with interstate commerce in violation of .the commerce clause of the constitution. The motion was denied. There was a verdict for the plaintiff. Judgment was entered on the verdict, and the defendant appeals.

Defendant's claims may be summarized as follows:

(1) That the prosecution of the action in Minnesota imposes an unreasonable burden on interstate commerce and constitutes a violation of the commerce clause of the federal constitution.

(2) That G. S. 1923 (2 Mason, 1927) § 9214, is violative of the fourteenth amendment.

(3) That under G. S. 1923 (2 Mason, 1927) § 9214, suit cannot be brought in Ramsey county because no part of defendant's line of railroad is therein.

(4) That the decedent was not employed by the defendant in interstate commerce.

(5) That the court erred in charging the jury upon the rule of comparative negligence applicable in case both the decedent and the defendant were negligent.

(6) That the court erroneously charged the jury upon the duty of the switching crew to exercise care in ascertaining the whereabouts of car inspectors in the yards; and, further, that as a matter of law the deceased assumed the risks and the defendant was not negligent.

The defendant attacked the jurisdiction of the court by a special appearance on motion to set aside the service of the sum-

mons. The ground urged upon the motion was that the trial in Minnesota would be an unreasonable burden on interstate commerce. The defendant relies upon Davis v. Farmers C. E. Co. 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996, and A. T. & S. F. Ry. Co. v. Wells, 265 U. S. 101, 44 S. Ct. 469, 68 L. ed. 928. It concedes that our holdings are adverse to its contention. State ex rel. Schendel v. District Court, 156 Minn. 380, 194 N. W. 780; Erving v. C. & N. W. Ry. Co. 171 Minn. 87, 214 N. W. 12; Kobbe v. C. & N. W. Ry. Co. 173 Minn. 79, 216 N. W. 543; Gegere v. C. & N. W. Ry. Co. 175 Minn. 96, 220 N. W. 429; Winders v. I. C. R. Co. 177 Minn. 1, 223 N. W. 291, 226 N. W. 213; Phillips v. C. & N. W. Ry. Co. 177 Minn. 233, 225 N. W. 106. In some of these cases reference is had to the extent of the defendant's railway system in Minnesota. Though created under foreign laws it is localized in Minnesota as one of the important railway systems of the state. It operates in connection with another railway which it substantially owns, and the two make one system. See State v. C. & N. W. Ry. Co. 133 Minn. 413, 158 N. W. 627. In the Erving case, 171 Minn. 87, 90, 214 N. W. 12, the defendant was said to be "physically here." We make no further discussion of our conclusion that the defendant's contention is not well taken; and indeed the defendant asks none but raises the point on the record, notwithstanding our adverse decisions, as with propriety it may do, for the purpose of obtaining a controlling federal review.

■ G. S. 1923 (2 Mason, 1927) § 9214, provides that actions shall be tried in the county in which one or more of the defendants resided when the action was begun; and that if the defendant be a foreign corporation the action may be begun and tried in any county which the plaintiff designates in the complaint. Section 9215 provides that if the county designated in the complaint is not the proper county the action may still be tried therein unless there is a demand for a change of venue. These two sections are parts of the same general law and are to be read and construed together. In State ex rel. Oakland M. C. Co. v. District Court, 176 Minn. 78, 222 N. W. 524, and State ex rel. T. C. & S. B. Co. v. District

Court, 178 Minn. 72, 225 N. W. 915, we held that § 9215 applied to a foreign corporation having a place of business in the state but sued in a county where it had no place of business, and that such foreign corporation could join with other defendants in a motion to change the venue to a county which was the choice of the majority. The foreign corporation has the rights given domestic corporations, and no burden not imposed upon a domestic corporation, or an individual, is imposed upon a foreign corporation. The statute is not discriminatory and in violation of the fourteenth amendment. In the case just cited reference was had to Power Mfg. Co. v. Saunders, 274 U. S. 490, 47 S. Ct. 678, 71 L. ed. 1165, which involved an Arkansas statute held to be unconstitutional as discriminatory against foreign corporations; and the phrase in § 9215 of our statute, "defendants residing in different counties," was held to include both foreign and domestic corporations so that there was no discrimination as under the Arkansas statute. And see Doll v. C. G. W. R. Co. 159 Minn. 323, 198 N. W. 1006; Baker v. Chicago J. S. L. Bank, 205 Iowa, 1259, 217 N. W. 621.

■ The district courts of the state are courts of general original jurisdiction. The nature of their organization is such that they are competent to try issues arising under the federal liability act. It is the understanding that except where venue is specially confined to a county, as for instance by § 9207 in the trial of actions for the recovery of land, actions may be brought and jurisdiction acquired and venue changed as provided in §§ 9214-9215.

The plaintiff's intestate was a resident of Illinois. He was killed on August 24, 1925. Suit was brought on November 16, 1925, in Ramsey county. A verdict was directed for the defendant. On appeal the order denying the plaintiff's motion for a new trial was reversed on March 18, 1927. Witort v. C. & N. W. Ry. Co. 170 Minn. 482, 212 N. W. 944. The second trial was commenced on September 19, 1927. Then for the first time, and after the cause of action was barred by the statute of limitations, the contention was made that the action could not be tried in Ramsey county because the defendant had no place of business in the county. There

had been no effort to invoke the provisions of § 9215 and obtain a change of the place of trial, and the time for such a motion had long passed.

The liability act is not averse to the trial in state courts of actions arising under it. By 45 USCA, § 56, it is provided that "no case arising under this chapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." The same section provides that an action may be brought in a district court of the United States in which the defendant is doing business at the time. The defendant was doing business and had a line of its railway in Goodhue county; and Goodhue and Ramsey, in which latter county the action is brought, are in the same division and district of the federal court. In the Winders case, 177 Minn. 1, 223 N. W. 291, 226 N. W. 213, in the order overruling the motion for a reargument, all is said that need now be said relative to Douglas v. N. Y. N. H. & H. R. Co. 279 U. S. 377, 49 S. Ct. 355, 73 L. ed. 424.

And we are unable to conceive how it can be held that the defendant could submit itself to the jurisdiction of the Ramsey county court and more than two years after attack the jurisdiction because of its claim that suit was not brought in the right county. The Ramsey court was of a jurisdiction competent to try the issues, and there was no reason why the defendant might not submit itself to its jurisdiction, as it did, though claiming an interference with interstate commerce. Our two recent cases of State v. District Court, cited in paragraph 2, constitute in effect a necessary holding that the district court has jurisdiction, though the action is brought in the wrong county, if the defendant cares to submit to it. Its belated claim that the Ramsey county court should not have entertained jurisdiction cannot be sustained.

■ At the first trial a verdict was directed for the defendant upon the ground of the insufficiency of the evidence to sustain the claim of the plaintiff that the deceased was engaged in interstate commerce. Witort v. C. & N. W. Ry. Co. 170 Minn. 482, 212 N. W. 944. On plaintiff's appeal there was a reversal. The facts were there detailed and reference may be had to them.

Witort was a car inspector and did light repairs when cars stood on the classification tracks. On the morning of the day when he was killed, the yard foreman directed a defective car to be shunted in on track 4 in the defendant's Proviso yards at Chicago. It was shunted in three or four car lengths to the east of the lead on which the crew was working. There was a defect in the east coupler of the car, that is, on the end away from the lead. The yardmaster then asked Witort to fix it. Still easterly on track 4, as we understand it, there were some 15 cars intended for Iowa. Shortly afterwards the yardmaster directed the switching crew to shunt in on track 4 some 13 cars which were a part of a drag of 18. This was done, and when they hit the defective car they pushed it easterly some 30 or 40 car lengths. A bad order car from the drag was then put on another track. Then an Iowa car, a freezer, was put on track 4, and later some other Iowa cars. When the switching crew went to work in the morning the blackboard in the yardmaster's shanty indicated that train 115 for Iowa would be made up on track 4. This track for many years had been used for making up the Iowa train, and train number 115 for many years had been an Iowa train. It was not enough that the defective car was intended for Iowa. It was essential that it be devoted to interstate transportation. Train 115 regularly left the Proviso yards at a quarter to one in the afternoon. Cars marked "O. K. for Grain" were Iowa cars. The defective car in the repair of which Witort was killed was marked "O. K. for Grain." There is no question that the defective car might have been diverted to other than interstate transportation. It might have been taken out of the train for any purpose, but the mere power to divert did not take it out of interstate commerce if it had once entered. Hughes Brothers Timber Co. v. Minnesota, 272 U. S. 469, 47 S. Ct. 170, 71 L. ed. 359. It does not seem that the defective car would have been put in the middle of a train unless it was to go as a part of the train. The cars which were shunted in soon afterwards were Iowa cars, as were the cars there in the morning. After the accident to Witort the defective car was taken out and placed on another track and photographed.

The other Iowa cars were taken from track 4 and placed on track 6, were made into a train, and went as train 115, at a quarter to one, to Iowa. The only reason that the defective car did not go was the accident to Witort while repairing it. It was taken out of the train which went to Iowa because of the accident to Witort. We are not able to see why a jury could not find that Witort when hurt was engaged in interstate commerce, or in work so closely connected with it as to make it practically a part thereof; indeed that seems the almost necessary finding. A number of cases are collected in Holz v. C. M. St. P. & P. R. Co. 176 Minn. 575, 224 N. W. 241, and are there reviewed.

■ The defendant claims that the court erred in its charge relative to the effect of the contributory negligence of the plaintiff, if found, upon the amount of damages. The liability act, 45 USCA, § 53, provides that:

"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

The court read this paragraph in its charge to the jury and later charged in general that contributory negligence on the part of the plaintiff was not a bar to recovery. It then said:

"If you find deceased was guilty of contributory negligence, the damages would be diminished by the jury in proportion to the amount of negligence attributable to deceased. If you reach that point in your deliberations where you find it necessary to consider the defense of contributory negligence, contributory negligence of the deceased is not a bar to recovery, but goes by way of diminution of damages on account of his negligence, as compared to the combined negligence of himself and defendant. If you find deceased was guilty of contributory negligence, then you will reduce the

damages in proportion to his negligence; that is, the proportion which it bears to the defendant's negligence. In other words, you take the negligence as a whole at 100 per cent. If you find deceased was guilty of negligence equal to the negligence of the defendant, you will reduce the amount of damages 50 per cent, that is, one-half. If you find the negligence of the deceased was 25 per cent, you will reduce the amount 25 per cent, and if, on the other hand, it was 75 per cent, you will reduce the damages 75 per cent. That is, you understand in the first place, if you come to that point at all, you will fix the amount of damages suffered, and then, if you find the deceased was guilty of contributory negligence, you will reduce that amount in proportion to the amount of negligence for which you find the deceased was guilty, as stated before."

The court charged correctly and very specifically as to how damages should be assessed in the event that contributory negligence was found. We think prejudicial error cannot be predicated upon the charge. I. C. R. Co. v. Skaggs, 240 U. S. 66, 73, 36 S. Ct. 249, 60 L. ed. 528; N. & W. Ry. Co. v. Earnest, 229 U. S. 114, 122, 33 S. Ct. 654, 57 L. ed. 1096. The particular portion challenged was inaccurate. Taken as a whole the jury must have understood.

■ The court charged that:

"If any of the employes of said defendant knew that said decedent was performing work upon the east end of this car, standing upon track 4, or if, in the exercise of ordinary care they should have known that he was performing work upon the east end of this car, in the exercise of ordinary care, then it would be negligence on the part of the defendant for this switching crew to kick cars down against the car deceased was working upon, unless said switching crew kicked said cars down said track in the usual and customary way and gave the usual and customary warning."

This charge put upon the defendant the active duty of exercising care to ascertain whether anyone was working about the car. It is the federal rule, which we must follow, and substantially our own, that inspectors and car repairers at work in the yards, and others doing similar work, must protect themselves, and the active

duty of looking for them is not cast upon the switching crew. They may protect themselves by the use of the blue flag; or, if two are working together, one may act as a lookout. The instruction, which implied the active duty of discovering the decedent's presence, was erroneous. T. St. L. & W. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. ed. 513; Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. ed. 758; Holz v. C. M. St. P. & P. R. Co. 176 Minn. 575, 224 N. W. 241, and cases cited. And under ordinary circumstances such employes assume the risk of cars moving without warning. T. St. L. & W. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. ed. 513; Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. ed. 758; Boldt v. Pennsylvania R. Co. 245 U. S. 441, 38 S. Ct. 139, 62 L. ed. 385; C. & O. Ry. Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. ed. 914.

There must be a new trial. The evidence indicates that when the switching crew knew of the presence of a man about a car, in a place of danger, it would not throw other cars against it without warning. Whether upon a new trial the facts will justify a submission to the jury is for determination when it is had. And we do not establish the law of the case by remarking upon the sufficiency or insufficiency of the evidence as it is now before us to justify the submission to a jury nor whether the question of the assumption of risks was a law or jury issue. The erroneous instruction results in a new trial.

Judgment reversed and new trial granted.