# H. N. BORIGHT v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.[1]

April 4, 1930.

No. 27,700.

[1]Reported in 230 N. W. 457.

*Davis, Michel & Yaeger* and *Leach & Leach,* for appellant.

*O'Brien, Horn & Stringer* and *F. A. Alexander,* for respondent.

*Tom J. McGrath,* for the Brotherhood of Railroad Trainmen; *Thomas Stevenson,* for the Brotherhood of Locomotive Firemen and Enginemen; *Oscar J. Horn,* for the Brotherhood of Locomotive Engineers; *Grimm, Wheeler, Elliott & Shuttleworth,* for the Order of Railway Conductors of America; and *Frederick M. Miner* and *Tautges, Wilder & McDonald,* amici curiae, filed briefs in support of the contention of appellant.

*Harold S. Nelson,* County Attorney of Steele County; *F. W. Root, C. O. Newcomb, A. C. Erdall,* and *Sawyer, Lord & Munck,* for the Chicago, Milwaukee, St. Paul & Pacific Railroad Company; *Samuel H. Cady,* for the Chicago & North Western Railway Company; *Walter H. Jacobs,* for the Chicago, Great Western Railroad Company; *J. C. James* and *Denegre, McDermott, Stearns, Stone & Mackey,* for the Chicago, Burlington & Quincy Railroad Company; and *Edward C. Craig, Charles A. Helsell,* and *Edwin C. Brown,* for the Illinois Central Railroad Company, amici curiae, filed briefs in support of the contention of respondent.

DIBELL, J.

Action in the district court of Rice county in the fifth judicial district to recover for personal injuries sustained by the plaintiff in Kansas while employed by the defendant railway company in interstate commerce. By stipulation the venue was changed to Steele county in the same district. The railway company moved

that the action be dismissed upon the ground that a trial of it in Steele county would unreasonably burden interstate commerce and so violate the commerce clause of the constitution; and further it alleged that the ends of convenience would be served if the case were dismissed and the trial were not had in Minnesota; and that it was within the power and discretion of the Minnesota courts to refuse jurisdiction and dismiss the case. The motion was granted and formal judgment of dismissal was entered. The plaintiff sought to review the judgment upon mandamus issued from this court. Upon hearing it was held that mandamus was not the proper remedy, and the writ was quashed and judgment of dismissal was entered. State ex rel. Boright v. District Court, 178 Minn. 236, 226 N. W. 569. The plaintiff appeals from the judgment.

In discussing the matters presented it is convenient to consider (1) whether the court had jurisdiction; (2) whether, if so, it should refuse to try the action in Minnesota because such trial would unreasonably burden interstate commerce; (3) whether jurisdiction should be refused because thereby the ends of convenience would be served; and (4) the effect of the federal employers liability act assuming to give concurrent jurisdiction to the state courts. There are no other questions.

The plaintiff is a citizen and resident of Kansas. The defendant is organized under the law of Illinois and Iowa. It has a line of railway and does a general interstate and intrastate railway business in Illinois, Iowa, Minnesota, South Dakota, Missouri, Kansas, and other states. Summons was served on the defendant's ticket agent in Rice county, through which its line runs, pursuant to G. S. 1923 (2 Mason, 1927) § 8009, § 9231 and § 9233. The defendant appeared and answered. It denied liability under the federal employers liability act and alleged that the plaintiff's injury occurred in intrastate commerce and that it and the plaintiff were subject to the workmen's compensation act of Kansas.

The district court had jurisdiction of the parties. It could proceed to judgment, unless because of the claimed unreasonable burden imposed upon interstate commerce; and it should do so

unless it ought to refuse to entertain jurisdiction for reasons of convenience and leave it to the plaintiff to bring suit elsewhere.

■ The cases upon which the defendant mainly relies in support of its claim that a trial in Minnesota will unreasonably burden interstate commerce are Davis v. Farmers Co-op. Equity Co. 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996, and A. T. & S. F. Ry. Co. v. Wells, 265 U. S. 101, 44 S. Ct. 469, 68 L. ed. 928. In neither of these cases did the defendant have a line of railway or do a railway business in the state where suit was brought, except that in the Davis case it solicited freight; nor did the cause of action upon which suit was brought arise in such state; nor was the plaintiff a resident there; nor, while unimportant here but mentioned because of what is said in paragraph four, was the action under the federal liability act. In each of them the facts stated in support of the claim of unreasonably burdening interstate commerce were more persuasive than here, for in this case the affidavit on which the motion for a dismissal is based merely states that a burden will result. To these cases may now be added Michigan Cent. R. Co. v. Mix, 278 U. S. 492, 49 S. Ct. 207, 73 L. ed. 470. There an accident resulting in death occurred in Michigan, where the deceased resided and was employed by the defendant in interstate commerce and under the laws of which the defendant was incorporated. The widow of the deceased employe moved to Missouri, where suit was brought. The defendant had no line of railway in Missouri and did no business there except as it solicited freight. The maintenance of the action in Missouri was held to impose an unreasonable burden on interstate commerce within the Davis case, 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996.

The defendant railway company has 280 miles of railroad in Minnesota. It runs through trains from the Twin Cities to Kansas City and farther to the southwest. It runs through trains to Chicago from the Twin Cities. It has a branch or two in Minnesota, and a line extends from Iowa through the southwest of Minnesota northwesterly into South Dakota, connecting that region with its lines in Iowa and other places. It travels a fertile and prosperous region of Minnesota. There are no waste places. It is one of the

large railway systems of the country, and the portion in Minnesota is an important part of it.

We have many times held that the trial of a cause of action against a railroad company which is so definitely and materially a part of the railroad business of the state, under conditions comparable with those shown in this case, does not unconstitutionally burden interstate commerce. State ex rel. Schendel v. District Court, 156 Minn. 380, 194 N. W. 780; Erving v. C. & N. W. Ry. Co., 171 Minn. 87, 214 N. W. 12; Kobbe v. C. & N. W. Ry. Co. 173 Minn. 79, 216 N. W. 543; Gegere v. C. & N. W. Ry. Co. 175 Minn. 96, 220 N. W. 429; Winders v. I. C. R. Co. 177 Minn. 1, 223 N. W. 291, 226 N. W. 213; Phillips v. C. & N. W. Ry. Co. 177 Minn. 233, 225 N. W. 106; Witort v. C. & N. W. Ry. Co. 178 Minn. 261, 226 N. W. 934.

That the interstate carrier has a considerable mileage and is active in the railroad business of the state is a factor in determining whether an unreasonable burden is imposed upon interstate commerce. This is noted in a number of the cases cited. The case of Hoffman v. Missouri ex rel. Foraker, 274 U. S. 21, 47 S. St. 485, 71 L. ed. 905, supports our view that under the facts of the case it should not be held that there is an unreasonable burden cast upon interstate commerce. There the action involved was under the federal employers liability act. It was brought by a citizen and resident of Kansas for the death of an employe of the Missouri Pacific Railroad Company occurring in Kansas. The deceased was a citizen and resident of Kansas. The railroad was a Missouri corporation. The action was brought in Missouri in a county traversed by the railroad in which it had an office and an agent for the transaction of business, and under the state statute service could be made upon him. Distinguishing the Davis [262 U. S. 312] and the Atchison [265 U. S. 101] cases, the supreme court held that there was no such interference with interstate commerce as justified a refusal of jurisdiction. The claim that there was a burden upon interstate commerce was substantially that set forth in detail in the Davis case. The court said [274 U. S. 22]:

"The railroad contends that, as it could have been sued in Kansas, where the accident occurred and the plaintiff resided, the statute,

as applied, was void, under the doctrine of Davis v. Farmers Co-op. Equity Co. 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996, and Atchison, Topeka & Santa Fe Ry. Co. v. Wells, 265 U. S. 101, 44 S. Ct. 469, 68 L. ed. 928, because a suit in Missouri would burden interstate commerce."

And after referring to the claim made of a burden upon interstate commerce continued:

"These allegations remind of Davis v. Farmers Co-op. Equity Co. But other facts on which the decision of that case was rested are absent in the case at bar. Here, the railroad is not a foreign corporation; it is sued in the state of its incorporation. It is sued in a state in which it owns and operates a railroad. It is sued in a county in which it has an agent and a usual place of business. It is sued in a state in which it carries on doubtless intrastate as well as interstate business."

The only distinction favorable to the defendant noted between the Hoffman case, 274 U. S. 21, 47 S. Ct. 485, 71 L. ed. 905, and the one at bar is that the defendant there was a domestic corporation while here it is a foreign corporation doing business in Minnesota. About one-half of the railways in Minnesota are wholly foreign. A few less are wholly domestic. Perhaps two are organized in Minnesota and in some other state or states. No distinction is made in their manner of doing business. All do intrastate and interstate business as it comes to them and as they can procure it by solicitation or by arrangement with other roads. We cannot think that the single difference mentioned, though we do not overlook it, results, in the case before us, in casting an unreasonable burden upon interstate commerce.

Counsel for the defendant concede that our decisions upon the point discussed in this paragraph are against their contention; and they make the point so that it may be available to them when they reach a court of final authority; and it is entirely proper that they should.

■ The defendant claims that in the interest of convenience the court should decline jurisdiction because the plaintiff is a resident

and citizen of Kansas, where the accident happened, and the defendant is a resident and citizen of Illinois and Iowa, having a line of railroad in Minnesota and in Kansas and doing a substantial railway business in each, as well as in the states where it is incorporated. It relies much upon Douglas v. N. Y. N. H. & H. R. Co. 279 U. S. 377, 49 S. Ct. 355, 73 L. ed. 747, affirming 248 N. Y. 580, 162 N. E. 532, which affirmed 223 App. Div. 782, 227 N. Y. S. 797.

In the Douglas case the action was under the employers liability act. The plaintiff was a resident and citizen of Connecticut and suffered an injury there. The New York court refused jurisdiction though the defendant, a Connecticut corporation, had a railway line and did a railway business in New York. It was the claim of the plaintiff that he was not given the protection of § 2 of art. IV of the federal constitution declaring that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

The New York statute is sufficiently quoted in the cases just cited. The claim of the defendant was that the basis of classification in New York was actual residence, using the word "resident" as "one actually living in the place for the time" [279 U. S. 386]; and that so construed the statute did not infringe the constitution. The Supreme Court under a familiar rule adopted the meaning given by the courts of New York to its statute and stated its majority view as follows [279 U. S. 387]:

"Construed as it has been, and we believe will be construed, the statute applies to citizens of New York as well as to others and puts them on the same footing. There is no discrimination between citizens as such, and none between nonresidents with regard to these foreign causes of action. A distinction of privileges according to residence may be based upon rational considerations and has been upheld by this court, emphasizing the difference between citizenship and residence, in LaTourette v. McMaster, 248 U. S. 465, 39 S. Ct. 160, 63 L. ed. 362."

The Douglas case is of intense interest, but its importance in the decision of the case before us is exaggerated. No statute and no decision of Minnesota puts residents and nonresidents or citizens and noncitizens on a substantially different standing in our courts. Of course the privileges and immunities clause does not require identical treatment. A familiar instance is the valid requirement of a bond for costs from a nonresident. Another illustration is found in C. N. Ry. Co. v. Eggen, 252 U. S. 553, 40 S. Ct. 402, 64 L. ed. 713, involving a limitation statute of Minnesota applicable when the cause of action arose outside of Minnesota.

We accord to citizens of other states the right to come into our courts for redress such as is accorded our own citizens. In an early case, Davis v. Pierse, 7 Minn. 1 (13), 82 Am. D. 65, there was involved a statute enacted during the progress of the civil war suspending the privileges of persons aiding the rebellion of prosecuting or defending proceedings in this state. Notwithstanding this statute, the right of a citizen of a sister state in rebellion, for secession did not take a state out of the union, was permitted to be heard in the courts of Minnesota. This illustrates in one aspect the view always taken in this state that citizens of other states may maintain their actions in the courts of Minnesota; and in accordance with the prevailing rule it always has been our holding that our courts are open to those from other states for the trial of transitory causes of action whether based upon common law or the statute of a sister state or a statute of the United States. There is a limitation that the law of the sister state be not contrary to the policy of our own law—not merely different from our own law but really opposed to its policy. Herrick v. M. & St. L. Ry. Co. 31 Minn. 11, 16 N. W. 413, 47 Am. R. 771; Endres v. First Nat. Bank, 66 Minn. 257, 68 N. W. 1092; Owens v. C. G. W. R. Co. 113 Minn. 49, 128 N. W. 1011; Davis v. M. St. P. & S. S. M. Ry. Co. 134 Minn. 455, 159 N. W. 1084; State ex rel. Bossung v. District Court, 140 Minn. 494, 168 N. W. 589, 1 A. L. R. 145; Dennick v. Central R. Co. 103 U. S. 11, 26 L. ed. 439; Robb v. Connolly, 111 U. S. 624, 4 S. Ct. 544, 28 L. ed. 542; Stewart v. B. & O. R. Co. 168 U. S. 445, 18 S. Ct.

105, 42 L. ed. 537; and see cases cited in paragraph two. Of course an act of congress is not opposed to the policy of our laws, for it is our law.

The state court in the Douglas case held that the law of New York was not unconstitutional in permitting its courts in the exercise of their discretion to reject jurisdiction. If it had held otherwise it would have been sustained by the Supreme Court for it was construing its own statutes; or if not it was determining its local law. In short, the Supreme Court said that under the New York statute as construed there was nothing offensive to the federal constitution. We have no statute like that of New York. Our law from the beginning has permitted without giving discretion suits such as the one before us. To refuse jurisdiction, ·the constitution aside, would result in a complete change of the local law—a change which we do not wish to make. And this may be noted: If there were no privileges and immunities clause in the constitution such actions as this could be maintained under our repeated holdings— under our law from the earliest times; and of course the privileges and immunities clause does not lessen the plaintiff's rights.

No argument, however sincerely urged, that the privileges and immunities clause ˙is impotent, so far as concerns giving to nonresidents or noncitizens rights of access to our courts, suggests that it compels us to deny access. It is idle to say that it is our law that citizens and residents of other states may not bring their transitory causes of action here. It is not our law that a so-called discretion can be exercised against those coming from other states. The law which permits access, if not enforced by the constitution, is local law; and if the privileges and immunities clause were unimportant, which was not the thought of the Supreme Court, or if it were so held here as hoped by the defendant, the question of right to take jurisdiction would be a question of local law for the supreme court of the state and a nonconstitutional one. In deciding the question of local law, one quite apart from the constitutional law, and the question which is ours to decide, we hold there is no discretion to refuse jurisdiction. Whatever the angle of approval, we hold that the action should not have been dismissed.

The defendant complains of the view taken by us of the duty of state courts to accept jurisdiction in cases arising under the federal employers liability act. The act as amended in 1910 provides:

"Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several states, and no case arising under this chapter and brought in any state court of competent jurisdiction shall be removed to any court of the United States." 45 USCA, p. 515, § 56.

The act was construed in the Second Employers Liability Cases, 223 U. S. 1, 32 S. Ct. 169, 56 L. ed. 327, 38 L.R.A.(N.S.) 44, in the Mondou case coming from Connecticut. The court of that state refused jurisdiction. The Supreme Court reversed its decision. Referring to it in some of our cases we held that it was our duty to accept jurisdiction of cases brought under the act and we refused to decline it. State ex rel. Prall v. District Court, 126 Minn. 501, 148 N. W. 463, Ann. Cas. 1915D, 198; Davis v. M. St. P. & S. S. M. Ry. Co. 134 Minn. 455, 159 N. W. 1084; State ex rel. Bossung v. District Court, 140 Minn. 494, 168 N. W. 589, 1 A. L. R. 145; State ex rel. Schendel v. District Court, 156 Minn. 380, 194 N. W. 780. The same holding was made in the courts of many of the states and, indeed, in many of the federal courts. See 45 USCA, p. 531, note 28; 20 Rose's Notes U. S. Rep. pp. 428-435; Am. Dig. Courts, 489(9½). It was the general holding. It is plain that the congress, when it enacted the amendment of 1910, wanted the help of the state courts in caring for the litigation necessarily attendant upon the administration of the liability act. It declined to permit actions brought in the state courts to be removed to federal courts. Southern Ry. Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. ed. 1321, Ann. Cas. 1918B, 69, and cases cited; Miner v. C. B. & Q. R. Co. 147 Minn. 21, 179 N. W. 483. In Owens v. C. G. W. R. Co.

113 Minn. 49, 53, 128 N. W. 1011, 1013, we interpreted the amendment (36 St. 291, c. 143) as unnecessary to give jurisdiction, which had been long exercised, "its effect being only as to the right of removing to the federal courts actions brought in the state courts." Considerations of economy and quickness of result likely were important. And the congress when it named the several courts in which suit might be brought likely had in mind that there were interests of employes which would be served best by not restricting the place of trial to the district where the cause of action arose or where the injured employe lived. The congress which by art. 1, § 8, of the constitution was given authority to regulate commerce in the exercise of that power created a liability act, and for the benefit of those employed and injured in interstate commerce provided that state courts might try their cases. Our reading of the Second Employers Liability Cases may have induced a too strong expression of our duty under the federal act to exercise the jurisdiction which we had. Many respectable courts were as much at fault, if it was a fault. But without a command we had jurisdiction, and if we felt it our duty to help carry the burden of litigation few will criticize. Our state as well as our sister states care for a mass of litigation arising from federal legislation without just blame for it.

Judgment reversed.

STONE, J. (dissenting).

If it be the duty of Minnesota courts to try these imported cases, however devious the route over which they come or however distant the state of origin, the duty must exist by reason of Minnesota's being one of the United States and so subject to their constitution; or it must be found in that principle of the common law known as comity. There being no effort in the opinion of the majority to put the supposed duty upon any foundation of recognized legal and stated principle, I must examine the result from the standpoint of both (1) constitutional law and (2) comity.

1. I agree with the first and second propositions of the opinion. I agree also that this court has long and consistently held it to be

the duty of Minnesota courts to try cases between citizens and residents of other states on transitory causes of action. But in so holding we have applied no law peculiar to Minnesota. We have resorted only to that of the federal constitution as we understood it to have been interpreted by the Supreme Court of the United States. State ex rel. Prall v. District Court, 126 Minn. 501, 505, 148 N. W. 463, Ann. Cas. 1915D, 198, is typical. The refusal of the district court to retain jurisdiction of a case "imported" from Iowa was held a violation of the equal privileges and immunities clause (art. 4, § 2) of the constitution. There was no other ground for the decision. "The one case cited" (Chambers v. B. & O. R. Co. 207 U. S. 142, 28 S. Ct. 34, 52 L. ed. 143) "from the court of final authority, concisely determines the question," says the opinion. This court has attempted to apply in this field only federal law as determined by the one tribunal competent finally to say what that law is. So, if now we should find that our long entertained notion of the applicable federal law is mistaken, or if the Supreme Court of the United States has definitely announced a new and different rule, we should not stubbornly adhere to our former opinion. The subject matter is of federal cognizance. Therefore the conclusion of the Supreme Court of the United States should control.

Just what was decided by Douglas v. N. Y. N. H. & H. R. Co. 279 U. S. 377, 49 S. Ct. 355, 73 L. ed. 747? It affirmed a judgment of the New York court *dismissing* an action under the federal employers liability act brought by a nonresident of New York against a foreign railway corporation doing business and having trackage in New York. In support of that concrete result Mr. Justice Holmes put these abstract propositions [279 U. S. 387]:

(1) So long as there is no discrimination between citizens as such, "a distinction of privileges according to residence may be based upon rational considerations and has been upheld by this court, emphasizing the difference between citizenship and residence"; and (2) the employers liability act "does not purport to require state courts to entertain suits arising under it, but only to

empower them to do so, so far as the authority of the United States is concerned. * * * There is nothing in the act of congress that purports to force a duty upon such [state] courts as against an otherwise valid excuse."

The district court has jurisdiction—no one questions it. The only thing now involved is its *power to dismiss* by reason of wrong venue rather than absence of jurisdiction. The decision in the Douglas case is that the supreme court of New York has that power. Wholly immaterial is the source of the power—whether in common law, statute or constitution. The important thing is not where the power comes from, but whether it exists. There is no word in any decision of the New York courts, so far as they have been brought to our attention, to indicate that their discretionary power to dismiss comes from any statute or that any statute has anything whatever to do with it.

All else aside, any attempt to distinguish the New York cases by invoking some statute merely as the source of the power must ignore the fact that *now,* under the constitution of Minnesota, *our district court has all the power that could be given it by statute.* Its powers "are neither defined nor restricted by the constitution; nor does its original jurisdiction depend in any degree upon legislative action." Agin v. Heyward, 6 Minn. 53, 57 (110). Being a court of "superior jurisdiction," it has "all the power that any court has" within the scope of its jurisdiction. Stahl v. Mitchell, 41 Minn. 325, 332, 43 N. W. 385. Hanford v. Village of Alden, 122 Minn. 149, 142 N. W. 15. Having, in any case properly before it, "all the power that any court has," how can we deny it the power to dismiss on the ground of "forum non conveniens"?

This court has never denied the existence of that power. So far as I know, it has never before even considered it. That is why in Winders v. Illinois Cent. R. Co. 177 Minn. 1, 9, 223 N. W. 291, 226 N. W. 213, I insisted that the question was an "open one" with us. In all our previous cases (other than those dealing with questions of comity, e. g. Herrick v. M. & St. L. Ry. Co. 31 Minn. 11, 16 N. W. 413, 47 Am. R. 771) the *"basis of the decision"* has been "the

privileges and immunities clause, requiring the same treatment of a suitor, *citizen* of another state, as is accorded to a suitor, *citizen* of this state." (Italics mine.) State ex rel. Bossung v. District Court, 140 Minn. 494, 497, 168 N. W. 589, 590, 1 A. L. R. 145. We have dealt with the question as one solely of federal law. Inasmuch as the precise issue, the power of the district court to dismiss on the ground of forum non conveniens, has never before been presented to this court, to say nothing of having been decided, I have difficulty in seeing just how our decision law is that the power does not exist.

2. Of course, no act of congress is foreign to Minnesota. The federal employers liability act is just as effective within our boundaries and in that sense just as local as an act of our own legislature. But we are not now considering the effect of that law. Nor are we concerned with the nature of the right of action it confers upon plaintiff. The only issue is in substance one of venue—has plaintiff a right to compel a Minnesota court to try his transitory cause of action, or may that court dismiss it upon grounds of convenience and because the proper forum is elsewhere? Although plaintiff's right comes from an act of congress it remains the cause of action of a nonresident originating on foreign territory. There is no constitutional duty resting upon us to try his case here; his right of access to our courts, if it exists, must be found in comity. The constitutional basis being eliminated by the Douglas case, there can be no other save comity.

While for all national purposes "the States and the citizens thereof are one," yet "in all other respects, the States are necessarily foreign to and independent of each other." Hanley v. Donoghue, 116 U. S. 1, 4, 6 S. Ct. 242, 244, 29 L. ed. 535; 5 R. C. L. 908; Davis v. M. St. P. & S. S. M. Ry. Co. 134 Minn. 455, 159 N. W. 1084. Except for constitutional obligations, "there can be no valid distinction in the relation which exists between the several states of the United States and between a state and a foreign nation." Renlund v. Commodore Min. Co. 89 Minn. 41, 46, 93 N. W. 1057, 1059; 99 A. S. R. 534; Emery v. Berry, 28 N. H. 473, 486, 61 Am. D. 622.

It follows that, save for the duties imposed by the constitution, we may deal with residents of other states precisely as we would if they were residents of the most remote of foreign nations. We could by comity, that is as matter of grace, of interstate or international courtesy and reciprocity (2 Wd. & Phr. [1 ser.] 1279; 5 R. C. L. 910) try their cases—all of them in which local jurisdiction of the defendants could be acquired. Or, with equal right, we could decline to exercise our jurisdiction on the ground of forum non conveniens, as the supreme court of Michigan said should have been done in G. W. Ry. Co. v. Miller, 19 Mich. 305; as is done in Ohio, Loftus v. Pennsylvania R. Co. 107 Ohio St. 352, 140 N. E. 94; as the supreme court of Vermont suggested might have been done in Morrisette v. C. P. Ry. Co. 76 Vt. 267, 56 A. 1102, and as has been done repeatedly in other states. Annotation, 32 A. L. R. 6, 33. Dismissal upon the ground of forum non conveniens is conventional practice in the English courts. 32 A. L. R. 39.

It seems to me that the decision in Davis v. Pierse, 7 Minn. 1, 3 (13), 82 Am. D. 65, confirms the views I am attempting to set forth. The case was decided during the civil war and involved a statute passed during that conflict, the intended effect of which was to suspend "the privilege of all persons aiding the rebellion * * * of prosecuting and defending actions and judicial proceedings in this state." It was held in contravention of both state and federal constitutions. But in reaching that decision, art. 1, § 8, of the state constitution, declaring every person entitled to a certain remedy in the laws and to obtain justice promptly and without delay, was construed as "intended for the benefit of, and * * * limited in its application to, the people of the state, or at most to such persons as are within its limits and subject to its laws." "All others," the court continued, "might be denied the privilege of our courts without depriving them of an absolute right. Even the citizens of other of the United States could not demand this privilege as a right, were it not" for the equal privileges and immunities clause in the constitution of the United States. And as applied to the citizen of another state the basis of the decision was

then, as it has been ever since until the instant case, that the federal constitutional mandate prevented our making any discrimination against nonresidents who happened to be citizens of other states. "The constitution of the United States," it was then said, as it has been said in substance repeatedly since, "seems to settle this question at once."

In Herrick v. M. & St. L. Ry. Co. 31 Minn. 11, 16 N. W. 413, 47 Am. R. 771, and Powell v. G. N. Ry. Co. 102 Minn. 448, 113 N. W. 1017 (Endres v. First Nat. Bank, 66 Minn. 257, 68 N. W. 1092, affirms jurisdiction, nothing more, of a right given by act of congress) the law was held to be that our district court has power to try tort actions for nonresidents to enforce rights given by statutes of other states. No one now denies that power. In the Herrick case, 31 Minn. 11, 16 N. W. 413, 47 Am. R. 771, there had been a dismissal on the ground of assumed lack of jurisdiction. That was plainly wrong, so reversal followed as matter of course. In the Powell case, 102 Minn. 448, 113 N. W. 1017, the district court in the exercise of its unquestionable jurisdiction tried the case. There was a verdict, no error, and affirmance followed as matter of course. True, both decisions are put on the ground of comity. But comity, while always implying jurisdiction, always as plainly negatives any inescapable duty to exercise it.

Speaking of statutes, we have one (simply declaratory of common law power—G. S. 1923 [2 Mason, 1927] § 9322) to the effect that the district court may dismiss for "sufficient cause shown." What is sufficient cause is a judicial question. That in such a case as this, the foreign origin of the cause of action and nonresidence of the plaintiff constitute sufficient cause has been established for us. Without denying the correctness of that view, it is now asserted that Minnesota has not the power its own statute says it has to dismiss an action for one "sufficient cause shown." Just when and how did it lose that power? How comes it that Minnesota has not the same "excuse" (i. e. power) of declining to try imported cases as New York has? Is not the state sovereignty of Minnesota as complete, its judicial power as ample, as that of

New York? And has not our district court all the power to dismiss for cause that any court, has? Does not the constitution of the United States operate upon Minnesota as considerately as upon New York, and are not the principles of private international law "part of our law" (Hilton v. Guyot, 159 U. S. 113, 163, 16 S. Ct. 139, 40 L. ed. 95) with the same effect on Minnesota as on New York?

The result achieved by the majority opinion seems to be due to an application of the rule of stare decisis. Several decisions of this court are referred to as establishing the supposed rule of decision law that is being applied. Just what the rule is, or why it is, or how it should be classified as a principle of law is not stated. There is no statute and, I respectfully insist, there is no other law of this state, which justifies the result. That is because, in no one of the decisions cited nor in any of this state that I have been able to find, was the judicial power to dismiss upon the ground now asserted in issue or its existence or nonexistence for decision. In order to make a judicial decision binding under the rule of stare decisis in a subsequent case, "there must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties and decide" the point "in contestation." Carroll v. Carroll, 16 How. 275, 287, 14 L. ed. 936. The reports of this court may, I believe, be searched in vain for any decision previous to this one wherein there was any "application of the judicial mind to the precise question" now before us. If that is so, we have no precedent for the judgment that is being pronounced in this case.

The only right now involved is not the fundamental and unquestioned right of a resident of Kansas to sue, but his supposed right to sue in a state not that of his residence, in this case Minnesota. It is now settled that no such right is given by American constitutional law. Certainly it is not given by any other. Not only is there no such right, but there is positive "injustice" in "permitting a perambulating suitor * * * to scan a list of the judges in the United States until he finds one believed to have an attentive ear and then to drag all interested into his tribunal."

Lefebvre-Armistead Co. v. Southern P. Co. 142 Va. 800, 805, 128 S. E. 244, 245. Very apt indeed is the observation of Mr. Justice Holmes [279 U. S. 387] that "there are manifest reasons for preferring residents in access to often overcrowded courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the courts concerned."

As was said in Ohio:

"The courts of our state are maintained at considerable expense, and only a small fraction of such expense [in Minnesota almost none of it] is charged to litigants, the major portion being met by taxes and levied upon the property of the state. The constitutional mandate that all courts shall be open does not require that the burdens of taxation in a single state shall be further increased to provide remedies by judicial process for those who for reasons of their own prefer to reside in other states." Loftus v. Pennsylvania R. Co. 107 Ohio St. 352, 369, 140 N. E. 94, 99.

In other words, local taxpayers have some fundamental rights.

There is yet another objection to the result. The sovereign character of state action, the independence of state authority, within the field of state government, have been considered a chief distinction and pride of our federal system. There are those who regret the extent to which federal power is overshadowing that of the states, who are alarmed by the facility with which state autonomy is being restricted and the reach of the federal government extended in proportion. Assuming, as some believe, that the evolution is desirable, it has been going on fast enough without any voluntary abdications of power by the states. The majority opinion seems to me an unnecessary surrender of a part of the judicial power of Minnesota. My views prevent my joining in the capitulation.

Finally, and on another matter not explicitly presented now by record or argument, but exuding nevertheless all over the case, I am constrained again, and upon the grounds I urged in the Winders case, 177 Minn. 1, 223 N. W. 291, 226 N. W. 213, to express disapproval of the continued failure of this court to take the steps necessary to put an end to the champertous solicitation of litigation

of this or any other kind. That intolerable practices are resorted to and intolerable burdens imposed on Minnesota courts and taxpayers is known to everybody. The situation has been noted by the Supreme Court of the United States (Davis v. Farmers Co-op. Eq. Co. 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996) and has received decidedly adverse comment more recently from the supreme court of Wisconsin. C. M. St. P. & P. R. Co. v. Wolf, 199 Wis. 278, 226 N. W. 297.

For the reasons above stated I consider that the courts of Minnesota are under no self-imposed disability which prevents their dismissal of a case for good cause; that such a cause was presented below; that the district court had the discretion to dismiss for the nonresidence of the plaintiff; that there was no abuse of it and that in consequence the judgment should be affirmed.

