## STATE EX REL. SCHENDEL, ADMINISTRATOR v. DISTRICT COURT OF LYON COUNTY.[1]

July 27, 1923.

No. 23,659.

**Mandamus to compel trial of action under Employers Liability Act in Lyon county.**

The amendment of April 5, 1910, to the Employers Liability Act, 36 St. 291, c. 143, Comp. St. 1913, § 8662, provides that an action under it may be brought in the Federal court in the district 'in which the defendant shall be doing business at the time of commencing such action;" and that the jurisdiction of such Federal court "shall be concurrent with that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States." The plaintiff's intestate sustained the injury from which he died in Wisconsin, which was the state of his residence. The action is based upon the liability act. It is claimed by the defendant that its trial in Lyon county, where brought, and where the defendant does business, will interfere with interstate commerce. It is *held* that the action was properly brought in the state court in Lyon county, and that the trial should proceed.

Upon the relation of A. D. Schendel, as special administrator of the estate of Thomas Kopczynski, deceased, the supreme court granted its order directing Honorable Arne Gislason, judge of the district court for Lyon county, to show cause why a peremptory writ of mandamus should not issue commanding said court and said judge to proceed with the trial of an action brought by relator against the Chicago & North Western Railway Company. Writ granted.

*Davis & Michel,* for relator.

*James H. Hall* and *Brown, Somsen & Sawyer,* for respondent.

DIBELL, J.

Writ of mandamus, original in this court, on the relation of A. D. Schendel, special administrator of Thomas Kopcznyski, to compel

[1]Reported in 194 N. W. 780.

the district court of Lyon county to proceed with an action pending therein in which the relator is the plaintiff and the Chicago & North Western Railway Company is the defendant.

The 'case was at issue and on the calendar for the June, 1923, term. The court, on motion of the defendant, declined to proceed with the trial, and dismissed the action, upon the ground that its trial in Lyon county, or elsewhere in the state, would unduly interfere with and burden and unreasonably obstruct interstate commerce.

The action was brought under the Federal Employers Liability Act. The injury resulting in the death of the decedent occurred in defendant's railroad yards in Milwaukee, Wisconsin. The plaintiff was appointed administrator by the probate court of Hennepin county, Minnesota. The relator claims that the deceased was a resident of Minnesota. The respondent claims that he was a resident of Wisconsin. For the purposes of this proceeding we assume that he resided in Wisconsin. The North Western is not incorporated under the laws of Minnesota. It owns and operates lines in Illinois, Wisconsin, Minnesota, Iowa, Nebraska, North Dakota, South Dakota and Wyoming. It has more than 650 miles of trackage in southern Minnesota. It has lines and stations in Lyon county, is doing business there, and service can be made there in accordance with the general laws of the state.

That it is the duty of a state court to exercise jurisdiction of a cause of action arising under the Federal Employers Liability Act, when its jurisdiction as prescribed by local law is adequate to the occasion and is properly invoked, admits of no doubt. In Hoxie v. N. Y. N. H. & H. R. Co. 82 Conn. 352, 73 Atl. 754, 17 Ann. Cas. 324, the state court declined jurisdiction, though not because of a supposed interference with interstate commerce. It reaffirmed its holding in Mondou v. N. Y. N. H. & H. R. Co. 82 Conn. 373, 73 Atl. 762. The latter case was one of those under review in Second Employers' Liability Cases [Mondou case], 223 U. S. 1, 32 Sup. Ct. 169, 56 L. ed. 327, 38 L. R. A. (N. S.)44. There the court, at page 56, speaking of the duty of the state court to exercise jurisdiction, said:

"We are quite unable to assent to the view that the enforcement of the rights which the congressional act creates was originally intended to be restricted to the Federal courts. The act contains nothing which is suggestive of such a restriction, and in this situation the intention of Congress was reflected by the provision in the general jurisdictional act, 'That the circuit courts of the United States shall have original cognizance, *concurrent with the courts of the several states,* of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of, two thousand dollars, *and arising under the Constitution or laws of the United States.'* August 13, 1888, 25 Stat. 433, c. 866, § 1."

And in closing a lengthy consideration of the questions involved it said [at page 59]:

"We conclude that rights arising under the act in question may be enforced, as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion."

The same principle is held under the bankrupt act. Claflin v. Houseman, 93 U. S. 130, 23 L. ed. 833.

The Employers Liability Act of April 22, 1908, 35 St. 65, c. 149, in force when jurisdiction was invoked in the Mondou case, contained no provision as to the jurisdiction of courts in actions arising under it. The general Federal Jurisdiction Act, 25 St. 433, c. 866, § 1, as noted in the Second Employers Liability Cases, provided that the circuit, now district, courts of the United States should have original cognizance concurrent with the courts of the several states of all suits of a civil nature at common law or in equity arising under the Constitution and laws of the United States. By section 6 of the amendment of April 5, 1910, 36 St. 291, c. 143, Comp. St. 1913, § 8662, to the Employers Liability Act, it is provided as follows:

"Under this act an action may be brought in a circuit [now district] court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing

such action. The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States."

In Trapp v. Baltimore & O. R. Co. 283 Fed. 655, the injuries for which the action was brought were sustained in Indiana. The plaintiff was a citizen of Indiana. The defendant was a railway corporation under the laws of Maryland and a citizen and inhabitant of that state. The action was brought in Ohio in a district in which the defendant maintained a system of interstate and intrastate steam railroads and did business. There was a motion to dismiss for want of jurisdiction. The court, referring to section 6 of the 1910 amendment, said [at page 656]:

"By this amendment, an action arising under that act may be brought in any one of four places: (1) In the district of the residence of the defendant; (2) in the district in which the cause of action arose; (3) in the district in which the defendant shall be doing business at the time of commencing such action; (4) in any state court which by the laws of the state has cognizance of the cause of action and may acquire jurisdiction of the parties. The language of the first sentence of the amendment is clear and explicit. It confers upon an injured employe the privilege of bringing his action in any one of three districts of the United States. The privilege thus conferred is not controlled by nor dependent upon the jurisdiction conferred by a state upon its local courts."

And referring to the provisions of an amendment, apparently Laws 1921, p. 81, to the Ohio General Code, § 11273, relative to actions against railroads, which was assumed to exclude concurrent jurisdiction in the state court because the injured employe did not reside and the cause of action did not arise in a county of the state, and so state jurisdiction could not be invoked, said [283 Fed. 657]:

"Defendant's argument appears to be that this court cannot take jurisdiction unless the state courts of this district had concurrent jurisdiction, and since, by a recent amendment to section 11273, G.

C. of Ohio, the concurrent jurisdiction formerly exercised by the state courts is taken away, then plaintiff's right to resort to this court likewise no longer exists. This contention, in my opinion, is not tenable. Neither section 6 as a whole, nor the last sentence thereof, permits of any such construction.

"The purposes of the 1910 amendment are clearly set forth in the Senate Judiciary Committee's report recommending its enactment. An examination thereof will disclose its purposes to a lawyer familiar with the existing law, particularly the purpose of the last sentence. As appears from the authorities already cited, an injured employe basing his right of action upon the Federal Employers' Liability Act of 1908, even if diversity of citizenship existed, could have brought his action only in the district of which the defendant was an inhabitant. Consequently Congress intended an enlargement of the provisions of section 51, Judicial Code, so as to permit the suit to be brought in any one of the four places provided by the amendment.

"The provisions of the last sentence of the amendment were not intended to limit the provisions of the first sentence, but were added for another and different purpose. It had been held by the Supreme Court of Errors of Connecticut, in Hoxie v. N. Y. N. H. & H. R. Co. 82 Conn. 352, 73 Atl. 754, 17 Ann. Cas. 324, that, inasmuch as Congress had by legislation assumed the control of the subject-matter of injuries to employees of interstate carriers while engaged in interstate commerce, no state court could take jurisdiction when such an employee's action was thus governed by the Federal Employers' Liability Act. This holding was undoubtedly wrong, as is forcibly pointed out in the report and as is shown by overwhelming authority. It was thought well, however, to remove any possible doubt by providing that state courts should have concurrent jurisdiction with the United States courts, thus declaring by statute the true rule as already declared by numerous decisions other than the Hoxie Case."

A similar case is Connelly v. Central R. Co. of New Jersey, 238 Fed. 932. There was a motion by the defendant to set aside the service of process on the ground of want of jurisdiction of the per-

son of the defendant. The cause of action arose under the Employers Liability Act. The plaintiff and the defendant were both residents of New Jersey, and the cause of action arose there. The action was brought in the district court of the southern district of New York where the defendant did business. The court, dismissing the motion, said [238 Fed. 933]:

"In the case at bar there is a clear provision in the Federal statute which sets forth the locus of the jurisdiction and allows a plaintiff to determine whether he should begin his action in the district where a defendant resides, where the cause of action arose, or where the defendant was doing business at the time of the commencement of the action. It may well be that instances may arise where inconvenience may result from bringing the action in a district where neither party resides and where the cause of action did not arise; but questions of convenience or of the work which shall be allotted to the various districts of the United States are, within constitutional limitations, entirely questions for the legislative branch.

"As the Congress has deemed it proper and desirable to confer jurisdiction as provided for in section 6 of this act, that provision is not to be defeated by an effort at refined distinction."

There is nothing in State v. District Court of Waseca County, 126 Minn. 501, 148 N. W. 463, particularly important here. We there held, construing article 4, § 2 of the Federal Constitution, providing that "citizens of each state shall be entitled to all privileges and immunities of citizens of the several states," and following Chambers v. Baltimore & O. R. Co. 207 U. S. 142, 28 Sup. Ct. 34, 52 L. ed. 143, that a state court could not refuse jurisdiction of an action by a citizen of Iowa upon a transitory cause of action for an injury arising there against a railway company incorporated in Illinois, having a line of railway in Iowa and Minnesota and doing business in each, if by statute or under its general policy the state exercised jurisdiction in like actions in behalf of its own citizens; that is, the state could not exclude noncitizens from its courts because of their citizenship in other states. No question of interference with interstate commerce was involved. Neither was there in the Trapp or Connelly cases.

In Davis v. Farmers Co-op. Equity Co. 262 U. S. 312, 43 Sup. Ct. 556, 67 L. ed. 996, reversing 150 Minn. 534, 186 N. W. 130, the court held invalid Laws 1913, c. 218, G. S. 1913, § 7735, providing that "any foreign corporation having an agent in this state for the solicitation of freight and passenger traffic or either thereof over its lines outside of this state may be served with summons by delivering a copy thereof to such agent." The railway sued was the Atchison, Topeka & Santa Fe Railroad Company, a Kansas corporation, engaged in interstate transportation. It did not own or operate a line in Minnesota, but had therein an agent for the solicitation of freight. The plaintiff was a Kansas corporation. The action was upon a bill of lading for loss of grain in an intrastate shipment in Kansas. The cause of action had no connection with Minnesota. It accrued in Kansas at a time when the road was under Federal control. The action was against the agent of the President under the Transportation Act of 1920. 41 St. 456, § 206 (a). It was held under the circumstances stated that the railroad had the right to solicit interstate traffic in Minnesota without subjecting itself to jurisdiction in the state, and that a statute imposing such a condition was obnoxious to the commerce clause of the Constitution. The court said [262 U. S. 315]:

"That the claims against interstate carriers for personal injuries and for loss and damage of freight are numerous; that the amounts demanded are large; that in many cases carriers deem it imperative, or advisable, to leave the determination of their liability to the courts; that litigation in States and jurisdictions remote from that in which the cause of action arose entails absence of employees from their customary occupations; and that this impairs efficiency in operation, and causes, directly and indirectly, heavy expense to the carriers; these are matters of common knowledge. Facts, of which we, also, take judicial notice, indicate that the burden upon interstate carriers imposed specifically by the statute here assailed is a heavy one; and that the resulting obstruction to commerce must be serious."

The defendant is not, as was the defendant in the Farmers Co-operative Equity case, a stranger to Minnesota. It is an important

part of the railroad community. It was one of the early lines in pioneer times. It serves a rich agricultural and a growing manufacturing and commercial portion of the state. It is here doing business. Jurisdiction was acquired. That is not denied. The question is whether the state should refuse to exercise it because such exercise will violate the commerce clause.

That Congress may determine where actions arising under the Employers Liability Act may be maintained is not questioned. The liability act finds its constitutional basis in article 1, § 8, giving Congress power "to regulate commerce with foreign nations, and among the several states." The ground of the successful attack upon the constitutional validity of the Employers Liability Act of June 11, 1906, 34 St. 232, was that it was not confined to interstate commerce. Employers' Liability Cases, 207 U. S. 463, 28 Sup. Ct. 14, 52 L. ed. 297. And it was an unsuccessful argument that the act interfered with the commerce clause because of the burdens it imposed upon interstate carriers. Continuing the thought that Congress may determine the place of trial of actions founded on the act, we note Alabama & V. Ry. Co. v. Journey, 257 U. S. 111, 42 Sup. Ct. 6, 66 L. ed. 153. The railroad was under Federal control.

The director general, under authority of the act of March 21, 1918, 40 St. 451, 456, c. 25, § 10, by General Orders No. 18 and No. 18A, fixed the venue of actions, reciting the evils which arose from bringing actions in places remote from where they arose. In referring to this holding in the Farmers Co-operative Equity case the court said [262 U. S. 316]:

"The facts recited in the order, to justify its issue, are of general application, in time of peace as well as of war."

Congress in a few words might exclude the state courts, or it might determine the place of trial in its own courts, so as to prevent a situation such as is now before us. The director general did. The state legislature could, to a limited extent at least, effect this result. The legislature of Ohio did, as noted in the Trapp case; but, if the Trapp case was correctly decided, anything the legislature might do would not prevent the bringing of suit in a Federal court in the state, the Federal statute remaining as it now is.

This is the situation. The defendant is one of the large railroad systems of the state. It has a location here. It does business in Lyon county and jurisdiction of it can be acquired there, and it was acquired. By the amendment of 1910 an action under the Employers Liability Act may be brought in a Federal district court of this state where the defendant does business, as well as in a state court having general jurisdiction appropriate to the trial of such cases. Under the doctrine of the Second Employers Liability cases the state court must exercise its jurisdiction, if adequate to the occasion, when a suitor comes to it. It is not a matter of its pleasure. It may not want his case. It may think the burden of trying it and the attendant expense should be borne in another state; but there is a right in the suitor, and a corresponding duty in the court, so the Supreme Court said.

We do not minimize the force of the argument based upon the Farmers Co-operative Equity case. It is not claimed that it decides this case, for the controlling points of the two are different; but it is urged that it indicates a future holding that a trial of the case in the state court is obnoxious to the commerce clause. Nor do we overlook the inconvenience and expense to which carriers are put when an action is brought at a point remote from the origin of the cause of action. Some inconvenience might occur if the trial of cases was limited to the locality of their accrual. Congress, when it framed the 1910 amendment, considered the question of policy, and declined to make the limitation. The state legislature makes no limitation. The liability act, based on the commerce clause, in terms permits the maintenance of the action in the state court where it is brought, or in a Federal court in the proper district of the state. It is a matter of legislative policy. We are asked to hold that the action should not be maintained in the state because its trial will substantially interfere with the interstate commerce and violate the commerce clause. It is the commerce clause which authorizes the legislation finding expression in the Employers Liability Act. This act provides that actions may be brought in the Federal court in a district where the carrier does business, and that state courts shall have concurrent jurisdiction. The question is a

Federal one. We do not think the Farmers Co-operative Equity case forecasts a Federal holding that a case under the Liability Act cannot of right be maintained in a Federal district court or a state court of appropriate jurisdiction in a district or county wherein the carrier does business.

Let a writ of mandamus issue.