[Civil No. 4640. Filed July 17, 1943.]

[140 Pac. (2d) 224.]

PRENTISS M. BROWN, Administrator, Office of Price Administration, Plaintiff, v. EVO De CONCINI, Judge of the Superior Court, Pima County, State of Arizona, Defendant.

Mr. Darrell R. Parker, Chief Attorney, and Mr. John R. Franks, Chief Enforcement Attorney, Office of Price Administration, for Plaintiff.

Mr. W. Dunlap Cannon, Jr., of San Francisco, California, of Counsel for plaintiff.

Honorable Evo De Concini, Defendant, for himself.

STANFORD, J.—This matter comes to us on a petition for a writ of *mandamus*. The petitioner, Prentiss M. Brown, Administrator, Office of Price Administration, appeared before the Superior Court of Pima County, Arizona, located at Tucson, and asked leave to intervene in a case pending in Division No. 2 of said court, presided over by the Honorable Evo De Concini. Petitioner appeared by reason of his authority pursuant to Section 205(d) of the Emergency Price Control Act of 1942, 50 U. S. C. A. Appendix, § 925(d), and that section reads as follows:

"In any suit or action wherein a party relies for ground of relief or defense upon this Act or any regulation, order, price schedule, requirement, or agree-

ment thereunder, the court having jurisdiction of such suit or action shall certify such fact to the Administrator. The Administrator may intervene in any such suit or action."

The suit, or action, that was pending in the said Superior Court was brought on complaint for damages under the aforesaid Emergency Price Control Act, and contained thirty-nine causes of action, each being for $50 as set forth in the prayer, based on thirty-nine sales by the defendant, Joe W. Tang, who apparently was conducting business under the firm name and style of Joe W. Tang's Market. The action was brought by Ethelbert L. Sand.

The complaint recited: "That jurisdiction of this action is conferred upon this Court by Section 205(c) and Section 205(e) of the Emergency Price Control Act of 1942."

In the complaint of said plaintiff he elected to sue for the sum of $50 and attorney's fee for each item sold to him where the price charged was in excess of the amount fixed by the Office of Price Administration, it being the privilege of the said plaintiff to sue for such amount, or treble the amount of the excess charge.

Pending before the filing of the petition of intervention in said court by the petitioner herein was a motion filed by the defendant to dismiss the complaint on the grounds of lack of jurisdiction, and specifically because: 1. That the complaint shows, upon its face, that the amount recoverable in this action is beneath the jurisdictional amount cognizable by the Superior Courts. 2. That the court is not obligated to entertain jurisdiction of the subject matter of this action, and, as a matter of policy, ought in the exercise of a sound discretion, to refuse it.

As stated, the matter coming before this court is on the petition of Prentiss M. Brown, Administrator,

Office of Price Administration, for a writ of *mandamus* requiring the judge of said court to vacate the order made and entered in his court on May 8, 1943, denying plaintiff's motion for leave to intervene, and commanding him further to make and enter in said cause an order granting this petitioner leave to intervene and become a party in said cause. Defendant, however, has filed a demurrer to the alternative writ of mandate pursuant to the provisions of Rule 2, Sub. 2 of the rules of our Supreme Court upon the grounds and for the reason that:

1. It appears that the plaintiff has a plain, speedy and adequate remedy by appeal from the order of the Superior Court denying him the right to intervene.

2. *Mandamus* is not a proper remedy for the enforcement of an alleged right of intervention.

But the plaintiff has asked that this court pass on the constitutionality of the Act as raised by the pleadings and briefs filed herein and we feel that this cause merits our attention also in that respect.

Defendant herein, in part, contends:

"That the action in which the plaintiff's motion to intervene was filed, is an action between two private citizens of the County of Pima, State of Arizona, under the so called treble damage provisions of the Emergency Price Control Act of 1942. That the plaintiff, Prentiss M. Brown, Administrator of the Office of Price Administration, has no interest in the subject matter of said suit, cannot be bound in any manner by the judgment therein, and wholly lacks the interest in the suit which is required of an intervenor. . . ."

"The defendant denies that Title 50 U. S. C. A. Appendix, Section 925(d) gave the plaintiff an unconditional right to intervene in said action in violation of Sections 21–527 and 21–528, Arizona Code Annotated, 1939, which controlled the right of intervention in the Superior Court of the State of Arizona."

Section 21–527 reads as follows:

"*Intervention of right.*—Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof."

From the record before us we do not find recognition by the Superior Court of the Price Control Act in so far as having certified to the administrator the action which he was hearing in Pima County. Reading the Act again, it is in part as follows:

"In any suit or action wherein a party relies for ground of relief or defense upon this Act or any regulation, order, price schedule, requirement, or agreement thereunder, the court having jurisdiction of such suit or action shall certify such fact to the Administrator. . . . "

This, as we say, was evidently not done, but the administrator, hearing of the action, filed a motion to intervene. The defendant herein, however, stated in his answer to alternative writ of *mandamus* that the action pending before him was an action between two private citizens, but under the provisions of the Emergency Price Control Act.

To uphold the defendant in this cause we would be saying that state courts should not extend jurisdiction to the Emergency Price Control Act of 1942. From the old case of *Claflin* v. *Houseman*, 93 U. S. 130, 137, 23 L. Ed. 833, we quote the following:

" . . . The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as

much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. The disposition to regard the laws of the United States as emanating from a foreign jurisdiction is founded on erroneous views of the nature and relations of the State and Federal governments. It is often the cause or the consequence of an unjustifiable jealousy of the United States government, which has been the occasion of disastrous evils to the country.

"It is true, the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by Chief Justice Taney, in the case of *Ableman* v. *Booth,* 21 How. 506, [62 U. S. 506, 16 L. Ed. 169]; and hence the State courts have no power to revise the action of the Federal courts, nor the Federal the State, except where the Federal Constitution or laws are involved. But this is no reason why the State courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied."

The same is the law today as it was when the decision was handed down.

In the case of *Henderson* v. *Kimmel,* D. C., 47 Fed. Supp. 635, 642, which is a case by Leon Henderson, former Administrator, Office of Price Administration, to enjoin Kimmel from demanding or receiving rents in excess of those established by maximum rent regulations issued by the Administrator, we quote the following:

"It must follow that Congress has the power to regulate the costs of commodities and facilities in order to insure the essential armaments, prevent defeat, and insure the victory. Indeed, the power to

regulate rents was sustained by the Supreme Court in *Block* v. *Hirsh,* 256 U. S. 135, 41 Sup. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165. We think there is no substantial difference in the requirement of the Act there involved that the rent should be 'fair and reasonable,' 41 Stat. 300, § 106, and the provision of the instant Act that the maximum rent fixed shall be 'generally fair and equitable.'

"In *Highland* v. *Russell Car & Snow Plow Company,* 279 U. S. 253, 262, 49 Sup. Ct. 314, 316, 73 L. Ed. 688, the court said: 'The Congress and the President exert the war power of the nation, and they have wide discretion as to the means to be employed successfully to carry on.' "

 The case of *United States* v. *MacIntosh,* 283 U. S. 605, 51 Sup. Ct. 570, 574, 75 L. Ed. 1302, expresses the views of this Court as to liberality that we should use in dealing with the agency of our national government during a crisis of this kind:

"From its very nature the war power, when necessity calls for its exercise, tolerates no qualifications or limitations, unless found in the Constitution or in applicable principles of international law. In the words of John Quincy Adams, 'This power is tremendous; it is strictly constitutional; but it breaks down every barrier so anxiously erected for the protection of liberty, property and of life.' To the end that war may not result in defeat, freedom of speech may, by act of Congress, be curtailed or denied so that the morale of the people and the spirit of the army may not be broken by seditious utterances; freedom of the press curtailed to preserve our military plans and movements from the knowledge of the enemy; deserters and spies put to death without indictment or trial by jury; ships and supplies requisitioned; property of alien enemies, theretofore under the protection of the Constitution, seized without process and converted to the public use without compensation and without due process of law in the ordinary sense of that term; prices of food and other necessities of life fixed or regulated; railways taken over and operated by the

government; and other drastic powers, wholly inadmissible in time of peace, exercised to meet the emergencies of war.''

The constitutionality of the Price Control Act was passed on in the case of *United States* v. *C. Thomas Stores, Inc.*, 49 Fed. Supp. 111, 114, the foregoing being a case where an indictment was issued against the defendants charging them with wilful violation of regulations promulgated by the Price Administrator under the Emergency Price Control Act of 1942. We quote the following:

''Upon examination of the Emergency Price Control Act of 1942, it will be found that its objects are set forth in comprehensive detail, among which are: ' . . . To stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; . . . to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to prevent hardships . . . to the Federal, State, and local governments, which would result from abnormal increases in prices; . . . to prevent a post emergency collapse of values. . . .' 50 U. S. C. A. Appendix, § 901(a).

''The Administrator is required to draft maximum price and rent regulations to effectuate such purposes. It will be observed that the maximum prices are to be those which in the Administrator's judgment will be generally fair and equitable. So far as practical, he is required to ascertain and give consideration to the prices prevailing between October 1, and 15, 1941. He is required to make adjustments 'for such relevant factors as he may determine and deem to be of general applicability,' including those specifically mentioned in the Act. Every regulation or order issued must be accompanied by a statement of 'the consid-

erations involved in the issuance of such regulation or order,' and before issuing any regulation or order, the Administrator is required, so far as practicable, to 'advise and consult with representative members of the industry which will be affected by such regulation or order.' Where any maximum price has been established for a commodity, the Administrator shall, 'at the request of any substantial portion of the industry subject to such maximum price, regulation, or order of the Administrator, appoint an industry advisory committee,' and, in connection with this phase of the Act, 'The Administrator shall from time to time, at the request of the committee, advise and consult with the committee with respect to the regulation or order.' 50 U. S. C. A. Appendix, § 902. It is urged that the standards are general and that much is left to the discretion and judgment of the Administrator. But, as a practical matter, how could it be otherwise? To straight-jacket the Administrator, in view of the fast-moving changes in the problems presented, would destroy that which Congress seeks to effectuate.

" . . . this is not a peace-time statute. Congress was confronted with a war emergency, and it is generally recognized that broad delegation may be permitted under such circumstances. (citing cases) The need for flexibility to meet the emergency requires that the standards be framed in such language which will permit the accomplishment of the legislative purpose."

The contention, as stated by the defendant herein, is that the statute of the State of Arizona relative to the right to intervene should control in this matter. We have not quoted Arizona cases, for we feel that the decisions quoted are controlling, and we hold that the Price Administrator has a right to intervene in this case.

Defendant claimed that the proper remedy for this plaintiff was appeal and that he could picture a stay of the action during the pendency of the appeal, but it is our opinion that if there was ever a

time when we should avoid the long delays of an appeal, it is now. Therefore, we hold that the plaintiff has no plain, speedy and adequate remedy at law.

It is, therefore, the judgment of the court that the alternative writ of *mandamus* heretofore issued be made peremptory, and that the defendant herein vacate the order made and entered in the cause pending before him on May. 8, 1943, and to make and enter in said cause an order granting plaintiff leave to intervene and become a party to said cause.

McALISTER, C. J., concurs.