# IRA A. DESPER v. WARNER HOLDING COMPANY.[1]

May 4, 1945.

No. 33,956.

[1]Reported in 19 N. W. (2d) 62.

608

R. H. *Fryberger* and M. R. *Keith,* for appellant.

*Thomas Tallakson,* for respondent.

*Fleming James, Jr.,* Director, Litigation Division; *David London,* Chief, Appellate Branch; *Harry E. Witherell,* Acting Regional Attorney; *Harris J. Nuernberg,* District Enforcement Attorney, and *Edward H. Hatton* (Washington, D. C.) and *Abraham H. Maller* (Chicago, Illinois) Attorneys, Office of Price Administration, filed a brief on behalf of Chester Bowles, Administrator, *amicus curiae.*

THOMAS GALLAGHER, JUSTICE.

This is an appeal from an order of the municipal court of Minneapolis denying the motion of defendant, a corporation, for amended findings or a new trial, and to set aside an assessment of damages against it as provided by the Emergency Price Control Act of 1942, § 205 (e),[2] for eight monthly rental overcharges demanded and received by it from plaintiff, in violation of Maximum Rent Regulation No. 53, issued under § 2 of the act.[3] Judgment was ordered

---

[2]"(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States." Act of January 30, 1942, 56 Stat. 23, as amended by Stabilization Extension Act of 1944, Pub. L. No. 383, 78th Cong. 2d Sess. (1944), 50 USCA, Appendix, § 925(e).

[3]7 F. R. 8596, issued October 22, 1943, and effective November 1, 1942. This regulation has been redesignated Rent Regulation for Housing, 8 F. R. 7322, effective June 1, 1943.

for plaintiff in the sum of $400, $50 for each of the eight monthly violations, plus attorneys' fees of $100 as provided for by the act.

The facts are as follows: Plaintiff was a tenant and defendant the landlord of certain premises located in the city of Minneapolis. The tenancy began September 1, 1942, at a rental rate of $63.50 per month less a $5-per-month discount if paid by the 10th of each month. Maximum Rent Regulation No. 53, hereinbefore referred to, had been issued effective November 1, 1942, and applied to the premises occupied by the tenant and established as a rental ceiling therefor the rental rate prevailing for said apartment on March 1, 1942, which was $52.50 per month. Notwithstanding this, from November 1, 1942, to July 30, 1943, defendant demanded and received a rental of $58.50 per month in violation of such regulation and the Emergency Price Control Act. Defendant contended that because of better furnishings he was entitled to more than the maximum rent, and, further, since the statute involved is penal in nature and of a foreign sovereignty, that it could not be enforced in the Minnesota courts.

The trial disclosed that additional furniture had been moved into the premises, and, further, that defendant had filed a petition for adjustment with the Office of Price Administration seeking to obtain higher rentals, but that the court made findings upholding the act and determining that defendant was guilty of violations thereof.

■ The validity of the maximum rent regulations of the Emergency Price Control Act of 1942 is not in question. Nor can the Minnesota courts pass upon the merits of a petition filed by defendant on July 20, 1943, to obtain an increase, nor upon the order denying such petition made on August 19, 1943, by said administrator. Sections 203 and 204 of the act indicate that Minnesota courts do not have jurisdiction for the determination of these questions. Section 204(d) provides:

"* * * The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have *exclusive* jurisdiction to determine the *validity*

of *any regulation* or *order* issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, *no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision.*" (Italics supplied.)

Under the provisions of § 203, one desiring to contest the validity of a regulation applicable to him may file a protest with the price administrator, stating objections to the regulation or order, and may likewise file a petition for adjustment seeking an increase in his particular case. *Upon a denial thereof,* the complainant may file a protest with the *Emergency Court of Appeals* (§ 204[a]) "to set aside such regulation, order, or price schedule, in whole or in part, to dismiss the complaint, or to remand the proceeding." Such language effectively eliminates the jurisdiction of the state or other federal courts on such issues.

The entire procedure contained in said sections, as well as the constitutionality of the act, has been upheld in the following cases: Yakus v. United States, 321 U. S. 414, 64 S. Ct. 660, 88 L. ed. 834; Bowles v. Willingham, 321 U. S. 503, 64 S. Ct. 641, 88 L. ed. 892; United States v. Pepper Bros. (3 Cir.) (1944) 142 F. (2d) 340; Bowles v. Nu Way Laundry Co. (10 Cir.) (1944) 144 F. (2d) 741; Brown v. Warner Holding Co. (D. C. Minn.) (1943) 50 F. Supp. 593. Accordingly, the validity of the act, as well as the merits of defendant's petition for an adjustment, is reserved exclusively to the administrative process, with judicial review lying in the *Emergency Court of Appeals* only, as provided by the act.

Defendant contends that the court below improperly exercised jurisdiction over the present action on the grounds that the

state courts will not entertain actions based on penal laws of a foreign sovereignty.

The Emergency Price Control Act was passed by congress to prevent inflationary price rises occasioned by the war. Housing accommodations are particularly subject to inflationary increases, because labor and material shortages eliminated the possibility of housing expansion, while at the same time the expansion of industry brings with it a proportionate increase in the demand for housing accommodations. Section 205(e) of the act was designed to create an effective deterrent against landlords seeking to increase rental demands. If this is to be effective, the remedy provided for therein should be capable of enforcement, and claimants thereunder should have access to local courts for such purpose.

Said § 205(e) provides that any action or suit thereunder may be brought in any court of competent jurisdiction, and § 205(c) of the act provides:

"The district courts shall have jurisdiction of criminal proceedings for violations of section 4 of this Act, and, concurrently with State and Territorial courts, of all other proceedings under section 205 of this Act."

The language indicates that congress intended the state courts to take jurisdiction where otherwise competent to do so. The remedy therein was patterned after the Fair Labor Standards Act, authorizing the recovery of double the amount of wrongfully withheld wages. The phrase contained in the Fair Labor Standards act[4] has been universally construed to authorize the maintenance of suits for double damages in *state courts* otherwise competent to exercise jurisdiction. See, Abroe v. Lindsay Bros. Co. 211 Minn. 136, 300 N. W. 457; Adair v. Traco Division, 192 Ga. 59, 14 S. E. (2d) 466; Forsyth v. Central Foundry Co. 240 Ala. 277, 198 So. 706; Emerson v. Mary Lincoln Candies, Inc. 173 Misc. 531, 17

[4]Section 16(b) of the Fair Labor Standards Act of 1938 (52 Stat. 1060, 29 USCA, § 216[b]), provides that an employe or employes may bring suit for double the amount of unlawfully withheld wages in "any court of competent jurisdiction."

N. Y. S. (2d) 851; Owens v. C. G. W. Ry. Co. 113 Minn. 49, 128 N. W. 1011; State ex rel. Schendel v. District Court, 156 Minn. 380, 194 N. W. 780. Since under Minnesota statutes the municipal court of Minneapolis has jurisdiction of civil actions of this type within certain limits not here involved, we hold that that court is a competent court of jurisdiction within the meaning of § 205 (c, e) of the act.

With respect to the argument that the cause of action is penal and the United States must be regarded as a foreign sovereignty, it is sufficient to note that the section in question provides for a private remedy to the person wronged by the violation of the act. In Huntington v. Attrill, 146 U. S. 657, 667, 13 S. Ct. 224, 227, 36 L. ed. 1123, 1127, the court stated:

"Penal laws, strictly and properly, are those imposing punishment for an offence committed against the State, and which, by the English and American constitutions, the executive of the State has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal."

See, also, Whitman v. Oxford Nat. Bank, 176 U. S. 559, 20 S. Ct. 477, 44 L. ed. 587; Kirtley v. Holmes (6 Cir.) (1901) 107 F. 1, 46 C. C. A. 102, 52 L. R. A. 738; Chattanooga Foundry and Pipe Works v. City of Atlanta, 203 U. S. 390, 27 S. Ct. 65, 51 L. ed. 241. Nor does the fact that § 205 (e) authorizes the recovery of a flat sum transform the cause of action from a remedial to a penal one. See, Brady v. Daly, 175 U. S. 148, 20 S. Ct. 62, 44 L. ed. 109; A. T. & S. F. Ry. Co. v. Nichols, 264 U. S. 348, 44 S. Ct. 353, 68 L. ed. 720; Hocking Valley R. Co. v. New York Coal Co. (6 Cir.) (1914) 217 F. 727, 132 C. C. A. 387.

Under the foregoing authorities, the conclusion cannot be escaped that § 205 (e) is clearly remedial. Thereunder the action is brought by the person injured, and the entire amount remains his property. Furthermore, it has universally been held that in actions of this

kind, whether the act be regarded as penal or remedial in nature, the United States is not a foreign sovereignty attempting to enforce a penal statute, and for that reason the state courts have jurisdiction to enforce the same. See, Claflin v. Houseman, 93 U. S. 130, 137, 23 L. ed. 833, 838; Mondou v. N. Y. H. H. & H. R. Co. 223 U. S. 1, 32 S. Ct. 169, 56 L. ed. 327; State of Missouri ex rel. St. Louis, B. & M. Ry. Co. v. Taylor, 266 U. S. 200, 45 S. Ct. 47, 69 L. ed. 247; McKnett v. St. Louis & S. F. Ry. Co. 292 U. S. 230, 54 S. Ct. 690, 78 L. ed. 1227; Gauthier v. Morrison, 232 U. S. 452, 34 S. Ct. 384, 58 L. ed. 680; M. & St. L. R. Co. v. Bombolis, 241 U. S. 211, 36 S. Ct. 595, 60 L. ed. 961, L. R. A. 1917A, 86, Ann. Cas. 1916E, 505; Grubb v. Public Utilities Comm. 281 U. S. 470, 50 S. Ct. 374, 74 L. ed. 972; State ex rel. Schendel v. District Court, 156 Minn. 380, 194 N. W. 780; Witort v. C. & N. W. Ry. Co. 178 Minn. 261, 226 N. W. 934; Owens v. C. G. W. Ry. Co. 113 Minn. 49, 128 N. W. 1011; Miller v. Municipal Court, 22 Cal. (2d) 818, 142 P. (2d) 297; Regan v. Kroger Grocery & Baking Co. 386 Ill. 284, 54 N. E. (2d) 210; Lapinski v. Copacino, 131 Conn. 119, 38 A. (2d) 592; Brown v. De Concini, 60 Ariz. 476, 140 P. (2d) 224.

■ Defendant urges that it acted in *good faith* in making the overcharge in the belief that its petition for adjustment would be favorably acted upon, in that it had justifiable reason for asking the increase in rental. However, in construing § 205 (e), the overwhelming weight of judicial authority is that such section, as originally enacted, provided for a mandatory recovery upon the showing of violations, irrespective of a defendant's good faith or lack of wilfulness. The leading case on this question is that of Bowles v. American Stores, Inc. (1943) 78 U. S. App. D. C. 238, 139 F. (2d) 377, 378, *certiorari* denied, 322 U. S. 730, 64 S. Ct. 947, 88 L. ed. 1565. Therein the court of appeals stated:

"The only question in dispute is whether the judgment should have been for $5 or $50. The position of appellee and of the Municipal Court of Appeals appears to be that the Act confers upon the trial court discretion to award the statutory sum of $50 or not to award it, as the court may think reasonable in the light of equi-

table considerations of fairness and policy. We think that position untenable. We find no language in the Act which has any tendency to support it. Nothing more than the unqualified language 'may bring an action * * * for $50 * * *' is necessary to refute it. But it is further refuted by the fact that the same sentence of the Act, while it says nothing about reasonableness or discretion in regard to the award of $50, provides for the award of *reasonable* attorney's fees and costs *as determined by the court.* Evidently Congress had the subject of judicial discretion in mind and deliberately omitted any provision for judicial discretion in regard to the award of $50. In the Hecht case [Brown v. Hecht Co. 78 U. S. App. D. C. 98, 137 F. (2d) 689] we held that the unqualified right to an injunction which is conferred by § 205(a) of the Emergency Price Control Act is not limited by the court's views of fairness and policy. We think it clearer that the unqualified right to recover a sum of money which is conferred by § 205(e) is not so limited.

\* \* \* \* \*

"The Municipal Court of Appeals reasons that 'Congress could not have intended to penalize alike the inadvertent mistake of the merchant who honestly and intelligently endeavors to comply with the law and the contumacy of one who dishonestly violates it.' But this reasoning overlooks the fact that the aim of § 205(e) is not to 'penalize.' That purpose is served by § 205(b), which provides criminal penalties and is limited to willful violations. Section 205(e) reflects the view that occasional hardship to one who honestly and intelligently endeavors to comply with the law is not too high a price to pay for the protection of the whole community against inflation."

See, also, Lapinski v. Copacino, 131 Conn. 119, 38 A. (2d) 592, *supra;* Bowles v. Franceschini (1 Cir.) (1944) 145 F. (2d) 510; Bowles v. Hasting (5 Cir.) (1944) 146 F. (2d) 94. Under the authorities cited, it is apparent that good faith is not material to the issues here involved, and the court below was correct in so ruling.

■ Defendant points out that § 205(e) was recently amended and that the effect of such amendment has been to make defendant's alleged good faith material to the issue and to justify a reduction in the amount of damages recoverable by plaintiff.

Section 205(e), as amended by the Stabilization Extension Act of 1944 (50 USCA, Appendix, § 925[e]),[5] provides that where a defendant is able to show (1) that his violations were made in good faith and (2) that he had taken all practicable precautions against the occurrence of the violations, then a court must award as damages $25 or the amount of the overcharges, whichever may be the greater. However, if a defendant is unable to meet this burden, then the court is given discretion to assess damages up to three times the amount of the overcharges, or $50, whichever may be the greater. The statute provides, however, that this amendment *does not apply* to violations where the buyer or tenant has the right of action and where the violations occurred *before June 30, 1944.* Section 108(c) of the Stabilization Extension Act of 1944, in re-

---

[5]"(e)  If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater:  (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. * * *"

gard to the applicability of these amendments, reads as follows:

"(c) *The amendment* made by subsection (b), insofar as it relates to actions by buyers or actions which may be brought by the Administrator only after the buyer has failed to institute an action within thirty days from the occurrence of the violation, *shall be applicable only with respect to violations occurring after the date of enactment of this Act..* In other cases, such amendment shall be applicable with respect to proceedings pending on the date of enactment of this Act and with respect to proceedings instituted thereafter."

Thus, the amendments are not. applicable to suits brought by persons such as the tenant here where the violations occurred prior to the effective date of the Stabilization Extension Act (June 30, 1944). Where, on the other hand, the price administrator has the right of action, then the amendments are applicable, and the courts have so held. See, Bowles v. Franceschini (1 Cir.) (1944) 145 F. (2d) 510, and Bowles v. Hasting (5 Cir.) (1944) 146 F. (2d) 94, *supra;* Speten v. Bowles (8 Cir.) (1945) 146 F. (2d) 602. One case involving a suit by a tenant against his landlord for damages under § 205(e) upholds this principle. In Gilbert v. Thierry (D. C. Mass.) (1944) 58 F. Supp. 235, 239, the court stated:

"Inasmuch as the violations all occurred prior to June 30, 1944, Section 108(c) of the Stabilization Extension Act of 1944, 78th Congress, 2d Sess., c. 325, * * * provides that the rule of damages shall be prescribed not by Section 108(b) of that Act but by Section 205(e) of the Emergency Price Control Act of 1942 * * *."

This case was subsequently appealed. In upholding the district court, the circuit court of appeals stated (Thierry v. Gilbert [1 Cir.] [1945] 147 F. [2d] 603, 604):

"The result is no doubt harsh * * * where the landlord acted innocently in making the overcharges. But as originally enacted, and as applicable here, the Act gave the tenant the right to recover the same penalty whether the violation was willful or not. The rigors of § 205(e) have been mitigated, *but only prospectively,* by

§ 108(b) of the Stabilization Extension Act of 1944, 50 U.S.C.A. Appendix § 925(e), the legislative history of which clearly indicates that Congress, by such amendment, intended among other things to obviate *for the future* the hardship in the very type of situation here presented." (Italics supplied.)

In this connection, it is to be noted that the present action was commenced on July 15, 1943, and that it was tried and submitted on April 18, 1944, while the amendment above referred to did not become effective until June 30, 1944.

Under the authorities cited, it is clear that such amendments to § 205(e) made by the Stabilization Extension Act of 1944 do not apply by their own terms to this action, and that the lower court was correct in refusing defendant's evidence on the question of good faith, and that it found the correct measure of damages.

■ Defendant contends that the action was prematurely brought, since there was a dispute as to the amount of the rental ceiling, contending that such ceiling must be first established by the price administrator before there can be a violation. The case of Berndt v. Shaw (People's Ct. Baltimore, Md. 1942) is cited by defendant in support of this contention. However, while the ruling of the lower court so held, this case was subsequently overruled by Duvall v. Mitchell (Baltimore City Court, 1943), 1 O. P. A. Ops. and Decs. 1873, 1874, wherein the latter court stated:

"* * '[People's] Court holds that suit cannot be presently maintained because of what is considered to be a lack of an indispensable part of the plaintiff's proof, namely, a finding of the Price Administrator decisive of the controlling maximum legal rent, in view of the dispute between the parties.' This is, in effect, a statement of the familiar principle that where special authority is granted to an administrative agency for the determination of disputes of fact, the administrative remedy must be exhausted before appealing to the courts for relief. * * *

* * * * *

"* * The scheme [for the prevention of rent increases] in

general effect depended upon an Order by the Administrator fixing rents at the level of April 1, 1941. Power was given to the Administrator to qualify the harshness of that order by modification in cases where special circumstances existed, but it was not contemplated that he be required to examine into the facts of each letting of housing accommodations, and determine disputed questions and controversies between the landlord and the tenant. It was, on the contrary, expected that the owners of dwellings would accept the sacrifice demanded of them by the law, and would in good faith comply with the requirement, as most of them have done. It was expected that the order might at once, on the day of its adoption and promulgation, go into general effect, without the necessity of any further act on the part of the Administrator. If its force were to be withheld pending the determination of disputed questions in particular cases, and to be ineffectual until these were resolved, then an army of agents would be needed, and a decade of time for their activities, during which the mischief sought by the law to be reached and dealt with would have been done, beyond the possibility of being undone.

\* \* \* \* \*

"\* \* \* In other words, the rights of the parties rest upon the facts, and not upon a mere administrative finding of fact. The judicial power extending to cases over which the court has jurisdiction embraces the authority to decide and determine every fact necessary to recovery."

Other courts have upheld this viewpoint. See, Whatley v. Love (City Ct. New Orleans, 1942); Walters v. Melavas (State District Court, Orange, N. J. 1943).

■ Defendant further contends that the suit was prematurely brought because the premises involved were rented under a lease for a definite term, and, while the rentals were payable monthly in advance, there could not be a violation until defendant had collected an amount in excess of the yearly ceiling maximum for the year involved. In denying defendant's contention, we adopt the viewpoint of Judge Matthew M. Joyce of the federal district court

of Minnesota, where the identical issue was passed upon in an action for injunctive relief brought by the price administrator against the same defendant and involving the same apartment. Therein Judge Joyce stated:

"Defendant's principal contention is that 'in practically every instance' the apartment was rented under a lease for a definite term with a designated sum as rent for that term, and although this sum was payable monthly in advance, there can be no violation until defendant collects an amount in excess of the total specified in the lease on the base date. (The 'base' or 'maximum rent' date was March 1, 1942, for accommodations rented on that date, with other provisions for accommodations subsequently rented.) Therefore, defendant contends that this action is premature. Defendant argues that as it had the established practice on the maximum rent date of renting on a contractual basis for a fixed term and amount, 'maximum rent' as used in the regulations must be defined as the term total prescribed in the lease and not the monthly instalment actually paid by the tenant. I cannot agree with this contention. There is no evidence in this case that any tenant paid his 'rent' more than one month in advance. Although a tenant might have the right to pay for a full year in advance under his lease, I do not see what effect that would have on the rent ceiling unless on the maximum rent date some tenant had actually done so. The leases provided for monthly payments in specific amounts. These amounts were paid by the tenants and accepted by the landlord on a monthly basis and are controlling in determining the maximum rents." Bowles v. Warner Holding Co., Civil Action No. 884, October 26, 1944, 60 F. Supp. 513.

The law is well established that a tenant charged in excess of the maximum permitted under the regulation is entitled to a separate cause of action and claim for each monthly violation of such regulation where the lease calls for monthly payments of rentals in advance, notwithstanding the fact that he rents under a yearly lease. It is true there are a few authorities to the contrary

on this point, but the majority of courts have held in accordance with the foregoing. See, Gilbert v. Thierry (D. C. Mass.) (1944) 58 F. Supp. 235, and Lapinski v. Copacino, 131 Conn. 119, 38 A. (2d) 592, *supra;* Beasley v. Gottlieb, 131 N. J. L. 117, 35 A. (2d) 49; Walters v. Melavas (State District Court, Orange, N. J. 1943), *supra;* Lewandowski v. Mirecki (Wis., Milwaukee County Civ. Ct., 16 O. P. A. Service 622.326); Beck v. Foumal (Or., Clackamas County Ct., 1 Price Control Cases No. 51,745); Pratt v. Hollenbeck (Pa. Ct. of Com. Pleas, 1 Price Control Cases No. 51,752); Greer v. Sims (Cal. Justice's Ct., 1 Price Control Cases No. 51,938).

■ Defendant contends that the court, under § 205(e) of the Emergency Price Control Act of 1942, is not required to exact the full amount permitted for recovery for each violation, but may award a lesser amount. In other words, it is defendant's contention that the act is permissive and not mandatory. The language of § 205(e) of the act specifically provides that a person injured by a violation of the act "may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court." Without exception the courts have construed this language to make it mandatory upon the court to allow damages of $50 for each violation under the act. See, Bowles v. American Stores, Inc. 78 U. S. App. D. C. 238, 139 F. (2d) 377, *certiorari* denied, 322 U. S. 730, 64 S. Ct. 947, 88 L. ed. 1565; Lapinski v. Copacino, 131 Conn. 119, 38 A. (2d) 592, *supra;* Beasley v. Gottlieb, 131 N. J. L. 117, 35 A. (2d) 49.

The 1944 amendment to the act,[6] which granted the court discretionary powers to assess damages for an amount less than $50 if violations were in good faith and notwithstanding all practical precautions against the occurrence thereof, by implication indicates that prior to such amendment no such discretion was vested in the court, but that the act made it mandatory to assess full damages

---

[6]Section 205(e), as amended by the Stabilization Extension Act of 1944, *supra.*

of $50 or treble the amount of the excess charged, whichever is greater, for each violation of the act.

Affirmed.