## KALWAR v. McKINNON.

### No. 4095.

Circuit Court of Appeals, First Circuit.

Nov. 14, 1945.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

Solomon Mondlick, of Boston, Mass., for appellant.

Roger B. Brooks, of Boston, Mass., for appellee.

William B. Sleigh, Jr., Regional Litigation Attorney, Office of Price Administration, of Boston, Mass., for the Administrator.

MAGRUDER, Circuit Judge.

Pursuant to § 205(e) of the Emergency Price Control Act of 1942, 56 Stat. 34, 50 U.S.C.A. Appendix § 925(e), the complaint in this case was brought by a tenant against his landlord on account of alleged overcharges of rent in violation of the applicable rent regulation. Appeal has been taken by the landlord from a judgment in favor of the tenant in the sum of $525, with costs. A brief has been filed in this Court by the Price Administrator as amicus curiae in support of the judgment below.

Maximum Rent Regulation 53, applicable to the Eastern Massachusetts Defense-Rental Area, was issued October 22, 1942, and became effective November 1, 1942 (7 F.R. 8596).[1] Section 1388.284 of the regulation provides:

"Maximum rents (unless and until changed by the Administrator as provided in § 1388.285) shall be:

"(a) For housing accommodations rented on March 1, 1942, the rent for such accommodations on that date."

It is thus apparent that if a housing accommodation was rented on the freeze date, the rent then charged automatically became the legal maximum rent on and after the effective date of the regulation, without the necessity of any previous factual determina-

[1] This regulation and similar regulations for other areas were combined and reissued under the designation Rent Regulation for Housing, effective June 1, 1943. 8 F.R. 7322, 14663.

tion by the Administrator of what, in the particular instance, was the rent actually being charged on the freeze date (which would have involved an impossible administrative burden). Section 1388.285 enumerates several exceptional situations in which the Administrator may, by subsequent order, change the maximum rent to a figure above or below the rent charged on the freeze date—for example, where there has been an increase or decrease of the services which the landlord was furnishing on the freeze date, or where the rent charged on the freeze date was materially affected by a special relationship between the landlord and tenant, and as a result was substantially lower or higher than the rent generally prevailing in the area for comparable accommodations on the freeze date.

As an aid to enforcement of the regulation, § 1388.287 provides that, within 45 days after the effective date of the regulation, the landlord shall file with the Administrator in triplicate a registration statement which "shall identify each dwelling unit and specify the maximum rent provided by this Maximum Rent Regulation for such dwelling unit * * *." The original registration statement remains on file with the Administrator, one copy is delivered to the tenant, and one copy, stamped to indicate that it is a correct copy of the original, is returned to the landlord. It is further provided that in any subsequent change of tenancy the landlord shall exhibit to the new tenant his stamped copy of the registration statement. It is clear, we think, that the figure put down by the landlord as the rent he was receiving on the freeze date does not become, even tentatively, the legal maximum rent. If the landlord makes a false statement in the registration statement, or if he neglects to file a registration statement, he may be subject to criminal penalties under § 205(b) of the Act; but in either case the legal maximum rent is determined by the formula set forth in § 1388.-284, and in any litigation where the point becomes relevant the rent which was actually being charged on the freeze date must be factually determined.

In the case at bar, the apartment in question, a dwelling unit in Brighton, Massachusetts, was owned by one Mosier on March 1, 1942, the freeze date. The tenants on that date were Mr. and Mrs. John Cox. The court below has found as a fact that the rent being charged on the freeze date was $42.50 a month. This finding is not disputed by appellant; indeed it could not be, since the evidence on which the finding was based has not been incorporated in the record on appeal.

Apparently Mosier failed to file the landlord's registration statement required by the regulation. On January 1, 1943, appellee McKinnon became a tenant at will of the apartment at a monthly rental of $47.50. Shortly thereafter Mosier sold the property to the Prudential Insurance Company. On June 7, 1943, the Prudential Insurance Company filed with the Area Rent Director a so-called "corrected" registration statement on the form issued by the Administrator. Under Section C, Item 1, "Rent on 'Maximum Rent Date'", the Prudential Insurance Company entered the figure $47.50 per month. Under Item 7, "The maximum legal rent for this dwelling unit is:" was entered in the appropriate blank "$47.50 per week ( ) per month (x)". In a corner of the registration statement form was printed the warning: "The rent for this dwelling unit on and after the 'effective date' can be no more than the Maximum Legal Rent entered in Section C, Item 7." The Area Rent Director stamped on the face of the registration statement: "Maximum rent subject to examination and review". A copy of this registration statement was sent to the tenant, appellee McKinnon.

On September 1, 1943, the Prudential Insurance Company sold the property to appellant Kalwar. McKinnon continued to occupy the apartment, thereafter as Kalwar's tenant, until May 31, 1944. During this nine-months' period, McKinnon paid Kalwar nine monthly payments of $47.50 each for rent of the apartment. For all that appears, and it is not suggested otherwise, Kalwar acted in entire good faith, relying on the registration statement theretofore filed with the Administrator by the prior owner. Kalwar, after purchasing, did not file a new registration statement, the regulation not requiring him to do so.

It is the theory of appellant that the provision in § 1388.284 is merely a formula for the establishment of maximum rents; that the application of this formula to the facts of an individual case, for the purpose of establishing the collectible maximum legal rent, "is the function of the Administrator"; that from the method adopted by the Administrator it is to be inferred that until the Administrator takes steps to change the maximum rent as stated in the

registration statement, "he considers the landlord's assertion as his order and regulation as to the Maximum Legal Rent applicable to the housing accommodation"; that this "order" fixing the maximum rent, at least tentatively, at $47.50 is binding on the district court, which under § 204(d) of the Act, 50 U.S.C.A. Appendix § 924(d), cannot consider the validity of such order, for which proposition Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, is cited.

■ The foregoing argument is contradicted by the plain words of the regulation. Under § 1388.284, the maximum rent is the rent for the housing unit on March 1, 1942, "unless and until changed by the Administrator". The Administrator has made no order fixing the maximum rent in the particular instance at $47.50, nor has he made any order under § 1388.285 changing the maximum rent from that established automatically by the application of the formula provided in § 1388.284. Under § 1388.287, the landlord is required to specify in the registration statement *"the maximum rent provided by this Maximum Rent Regulation* for such dwelling unit." [Italics ours.] If he specifies it incorrectly, he does not thereby establish the maximum legal rent at the asserted figure. To make this clear, the Administrator has caused to be stamped on the face of the registration statement, "Maximum rent subject to examination and review".

■ It is true that § 1388.285(d) of the regulation contains the further provision: "If the rent on the date determining the maximum rent * * * is in dispute between the landlord and the tenant, or is in doubt * * * the Administrator on petition of the landlord filed within 30 days after the effective date of this Maximum Rent Regulation, or at any time on his own initiative, may enter an order fixing the maximum rent by determining such fact; * * *." The Administrator has made no such determination and order in this case; and in the absence thereof, the rent actually being charged for the dwelling unit in question on March 1, 1942, necessarily became a fact to be proved in the court in which the tenant's statutory right of action against the landlord was pending. Desper v. Warner Holding Co., 1945, 219 Minn. 607, 19 N.W.2d 62; Bowles v. Griffin, 5 Cir., 151 F.2d 458. We have no occasion to consider in this case what would have been the ef-

fect, retroactively or prospectively, in various situations that might be imagined, of such a determination and order by the Administrator under § 1388.285(d). Cf. Bowles v. Griffin, supra. The making of such a determination and order under this subsection is discretionary with the Administrator; presumably he would not ordinarily burden himself with the task where the tenant has chosen to file a complaint in a competent court in which the disputed fact can be determined.

■ The district court correctly applied the regulation and the mandatory provisions of the Act governing the amount of the tenant's recovery Each of the nine monthly overcharges constituted a separate violation for which the statutory penalty of $50 was recoverable, making a total of $450. Thierry v. Gilbert, 1 Cir., 1945, 147 F.2d 603. The result seems unduly severe —one might almost say, unconscionably so—under the facts of the particular case. The rigors of original § 205(e) of the Act have wisely been mitigated by § 108(b) of the Stabilization Extension Act of 1944, 58 Stat. 640, 50 U.S.C.A. Appendix § 925 (e), in the direction of giving a wider discretion to the court in fixing the amount of damages. Under that amendment, in circumstances like the present case, recovery would be limited to the amount of the overcharges—here $45—where the landlord's violation was neither willful nor the result of failure to take practicable precautions. Unfortunately for the present appellant, however, the violations in this case occurred prior to the passage of the Stabilization Extension Act of 1944, which, in this respect, has no retrospective application. Desper v. Warner Holding Co., supra.

In addition to the recovery of $50 for each violation, the tenant is entitled under § 205(e) to recover also "reasonable attorney's fees and costs as determined by the court." The district court has allowed $75 as attorney's fee for the proceedings in that court. We take it that the tenant is also entitled to an allowance of a reasonable attorney's fee for the proceedings on appeal, which under the circumstances we think should be fixed at a very modest figure, $25.

The judgment of the District Court is affirmed, with the addition of $25 for attorney's fee in this court and costs to the appellee.